No. 11-10838

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

RALPH S. JANVEY,

      Plaintiff - Appellee

v.

JAMES R. ALGUIRE; VICTORIA ANCTIL; TIFFANY ANGELLE; SYLVIA AQUINO; JONATHAN BARRACK; ALAN BROOKSHIRE; JAMES C. CHANDLEY; DAVID BRAXTON GAY; GREGORY C. GIBSON; JOHN GREAR; JASON LIKENS; KALE OLSON; TIMOTHY D. ROGERS; NICK SHERROD; SUSAN GLYNN; JOHN WHITFIELD WILKS; STEVE SLEWITZKE; BRAD BRADHAM; NOLAN FARHY; VIRGIL HARRIS; LOUIS SCHAUFELE; ERIC URENA; BIANCA FERNANDEZ; NANCY J. HUGGINS, ET AL,

      Defendants - Appellants

On Appeal from the United States District Court for the Northern District of Texas
Dallas Division C.A. No. 3:09-CV-724-N

## BRIEF OF APPELLANTS (115 FA DEFENDANTS)

Bradley W. Foster
Matthew G. Nielsen
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:  (214) 659-4400
Facsimile:  (214) 659-4401

**ATTORNEYS FOR APPELLANTS**
(115 FA DEFENDANTS)

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Kevin M. Sadler
Robert I. Howell
David T. Arlington
Scott D. Powers
Baker Botts L.L.P.
1500 San Jacinto Center
98 San Jacinto Boulevard
Austin, Texas  78701-4078

Timothy S. Durst
2001 Ross Avenue, Suite 600
Dallas, Texas  75201-2980

Charles E. Gale
Cardinal Investment Company Inc
2100 McKinney Ave
Suite 1780
Dallas, TX 75201

Ben L. Krage, Esq.
Krage & Janvey, L.L.P.
2100 Ross Avenue, Suite 2600
Dallas, TX 75201-0000

Attorneys for Receiver Ralph S. Janvey

David B. Reece
Mike Post
D. Thomas Keltner
J. Kevin Edmundson
Michael D. King
Steve J. Korotash
U.S. Securities & Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, Texas  76102-6682

Attorneys for the U.S. Securities & Exchange Commission

John J. Little
Little Pedersen Fankhauser
901 Main Street, Suite 4110
Dallas, Texas  75202

Court Appointed Examiner John J. Little

Rodney Acker
Barton Wayne Cox
Ellen B. Sessions
Fulbright & Jaworski
200 Ross Avenue, Suite 2800
Dallas, Texas  75201

Attorneys of Record for Pershing LLC

J. P. Morgan Clearing Corp
One Metrotech Center North
Brooklyn, NY 11201-3859

Held or currently holds SCG customer and former employee accounts

Bradley W. Foster
Matthew G. Nielsen
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201

Attorneys for Defendants Jim Alguire, Orlando Amaya, Victoria Anctil, Tiffany Angelle (Degeyter), Sylvia Aquino, George Arnold, Mike Arthur, Donal Bahrenburg, Brown Baine, Stephen Barber, John Barrack, Andrea Berger (Freedman), Norman Blake, Michael Bober, Nigel Bowman, Alexandre Braune, Nancy Brownlee, George Cairnes, Frank Carpin, Scott Chaisson, Neal Clement, Jay Comeaux, Michael Conrad, John Cravens, Patrick Cruickshank, Greg Day, Bill Decker, Mike DeGolier, Arturo Diaz, Tom Espy, Jason Fair, Evan Farrell, Roger Fuller, Attlee Gaal, Gregg Gelber, Michael Gifford, Steven Glasgow, John Glennon, Ward Good, Stephen Greenhaw, Billy Ray Gross, Patricia Herr, John Mark Holliday, Charles Hughes, Wiley Carter Hutchins, Jr., David Innes, Allen Johnson, Bruce Lang, Jim LeBaron, Bill Leighton, Robert (Bobby) Lenoir, Trevor Ling, Chris Long, Robert Long, Humberto Lopez, Michael Macdonald, Maria Manerba, Mike Mansur, Bert "Deems" May, Doug McDaniel, Matt McDaniel, Pamela McGowan, Lawrence Messina, Bill Metzinger, Trent Miller, Peter Montalbano, David Morgan, Jonathan Mote, Carroll Mullis, Jon Nee, Aaron Nelson, Norbert Nieuw, Scott Notowich, Monica Novitsky, Bill Peerman, Saraminta Perez, Randy Pickett, Edward Prieto, Christopher Prindle, Andrew Pritsios, Judith Quinones, Sumeet Rai, Michael Ralby, Nelson Ramirez, Steven Restifo, Jeff Ricks, Alan Riffle, Steve Robinson, Eddie Rollins, Rocky Roys, John Santi, Bill Scott, Haygood Seawell, Leonard Seawell IV, Doug Shaw, Paul Stanley, Sandy Steinberg, David Heath Stephens, William O. Stone, Jr., Paula Sutton, Brent Sutton, Scot Thigpen, Jose Torres, Al Trullenque, Audrey Truman, Roberto Ulloa, Tim Vanderver, Pete Vargas, Ed Ventrice, Maria Villanueva, Charles Vollmer, Bill Whitaker, Donald Whitley, Hunter Widener, and Tom Woolsey

Gene R. Besen
Sonnenschein Nath & Rosenthal LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas  75201

Attorney for Defendants Jeffrey E. Adams, Timothy W. Baughman and Thomas G. Rudkin

Brett Feinstein
Stratton & Feinstein, P.A.
407 Lincoln Road, Suite 2A
Miami Beach, Florida  33139

Attorney for Defendant Dulce Perezmora and Marie Nieves

J. Pat Sadler
Sadler & Hovdesven, P.C.
1155 Hightower Trial, Suite 200
Atlanta, Georgia  30350

Robert L. Wright
Robert L. Wright, P.C.
612 Eighth Avenue
Fort Worth, Texas  76104

Attorneys for Defendants Julian "Brad" Bradham, Nolan Farhy, Blanca Fernandez, Virgil Harris, Nancy Huggins, Lou Schaufele, Harvey Schwartz, Steve Slewitzke, and Eric Urena

John Timothy Byrd
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas  77002

Attorney for Defendant Zack Parrish

W. Perry Zivley, Jr.
Chandler, Mathis & Zivley, P.c.
909 Fannin, Suite 3750
Houston, Texas  77010

Attorney for Defendants David Wayne Krumrey and E. Randolph Robertson, Jr.

Alexander Angueira
Alexander Angueira, PLLC
7301 SW 57 Court, Suite 515
South Miami, Florida  33157

Attorney for Defendants Daniel Hernandez and Roberto A. Pena

Karissa K. Cottom
James M. Reed
Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.
320 South Boston Avenue, Suite 200
Tulsa, Oklahoma  74103-3706

Attorneys for Defendant James Weller

Jason W. Graham
Eric L. Jensen
Graham & Penman, LLP
2989 Piedmont Road NE, Suite 200
Atlanta, Georgia  30305

Attorneys for Defendants Robert David Haggard, Julian "Brad" Bradham, Nolan Farhy, Blanca Fernandez, Virgil Harris, Nany Huggins, Lou Schaufele, Harvey Schwartz, Steve Slewitzke, and Eric Urena

William M. Lamoreaux
900 Jackson Street, Suite 180
Dallas, Texas  75202

Attorney for Defendant Jordan M. Estra

Kerry C. Peterson
Matthew D. Rinaldi
Miller, Egan, Molter & Nelson, LLP
4514 Cole Avenue, Suite 1250
Dallas, Texas  75205

Attorneys for Defendant Patricio Atkinson

John P. Kincade
Winstead PC
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas  75270

Attorney for Defendant Jason Green

Laura Gibson
Linda Broocks
Leila El-Hakam
Ogden, Gibson, Broocks &
Longoria, LLP
1900 Penzoil South Tower
711 Louisiana
Houston, Texas  77002

Attorneys for Defendants Gustavo A. Garcia Escalante, Robert A. Kramer, James
F. Anthony, Helena M. Herrero, Nicholas P. Salas, Juan C. Riera, Giampiero
Riccio, Kelley L. Hawkins, Lori Fischer, Juliana Franco, Michael Contorno, Jane
E. Bates and Susan K. Jurica

Uttam Dhillon
Fitzpatrick Hagood Smith & Uhl LLP
2515 McKinney Avenue, Suite 1400
Dallas, Texas  75201

Attorney for Defendants Tony Perez and Manuel Malvaez

D. Elaine Conway
James T. McBride
Jackson Walker, L.L.P.
1401 McKinney, Suite 1900
Houston, Texas  77010

Attorneys for Defendant Timothy Johnson

Joseph J. Mastrogiovanni, Jr.
Mastrogiovanni Schorsch & Mersky, P.C.
2001 Bryan Street, Suite 1250
Dallas, Texas  75201

Attorney for Defendant Gail Nelson

Tricia R. DeLeon
Janelle S. Forteza
Bracewell & Giuliani LLP
1445 Ross Avenue, Suite 3800
Dallas, Texas  75202-2711

Attorneys for Defendants Kathleen Reed, Megan Malanga, Timothy W. Summers, Carter Driscoll and Jon C. Shipman

William S. Chesney, III
William L. Van Fleet
Frank, Elmore, Lievens, Chesney & Turet, L.L.P.   808 Travis Street
Suite 2600
Houston, TX  77002-5705

Attorneys for Defendants Robert Hogue and Nolan N. Metzger

Stacy Williams
Charles R. Parker
Locke Lord Bissell & Liddell, LLP
600 Travis Street
Suite 2800
Houston, Texas  77002-3095

Attorneys for Defendant David Nanes

T. B. Nicholas, Jr.
Downs & Stanford, P.C.
2001 Bryan Street
Suite 4000
Dallas, TX  75201

Attorney for Defendant Syed Razvi

Mike O'Brien
Mike O'Brien, P.C.
14355 Highway 105
Washington, TX  77880

Attorney for Defendant Mark Tidwell

Matthew R. Baker
Carolyn R Raines
Godwin Ronquillo PC
1201 Elm St
1700 Renaissance Tower
Dallas, TX 75270

Attorney for Defendant John D. Orcutt

H. Stephen Brown
The Brown Law Firm PLC
850 Ridge Lake Blvd
Suite 300
Memphis, TN 38120

John Morant Cone
Hitchcock Evert LLP
750 N St Paul St
Suite 1110
Dallas, TX 75201

Attorneys for Defendant Larry Goldsmith

Jeffrey J Chomko
Allyson N. Ho
Dennis C Dice
Marshall Dennehey Warner Coleman & Goggin
1845 Walnut St
17th Floor
Philadelphia, PA 19103

Elizabeth Hoop Fay
Rachel Morgan
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

Attorneys for Defendant SEI Private Trust Company

H Miles Cohn
Sheiness Scott Grossman & Cohn LLP
1001 McKinney St
Suite 1400
Houston, TX 77002-6420

Attorney for Defendant Robert C. Williams

D Elaine Conway
Jackson Walker LLP
1401 McKinney St
Suite 1900
Houston, TX 77010

Attorney for Defendant Timothy Johnson

Scott J Davenport
Davenport Law Firm PC
1500 McGowen
Suite 200
Houston, TX 77004

Attorney for Defendant Robert J Bruno

Kevin H Good
Curtis C Graves
Conner & Winters LLP
1700 Pacific LLP
Suite 2250
Dallas, TX 75201

Attorney for Defendant Gary Lieberman

James B Greer
Joseph A Hummel
Kenneth C Johnston
Kane Russell Coleman & Logan PC
1601 Elm St
Suite 3700
Dallas, TX 75201

Attorney for Defendant Regions Bank, as Trustee for LPFA II City Plaza Project
Series 2008 and II City Plaza LLC

Patricia Hair
Dan Zimmerman
Bruce V Schewe
Phelps Dunbar LLP
700 Louisiana St
Suite 2600
Houston, TX 77002

Kendall Kelly Hayden
Cozen O'Connor
2300 Bankone Center
1717 Main Street
Dallas, TX 75201

Attorneys for Defendant Ross D. Bruce

Kimberly A Lucas
Judith P Rodden
Kyle Mathis & Lucas LLP
8226 Douglas Ave

Suite 450
Dallas, TX 75225

Attorney for Defendant Gold Wing Partners

Lance C McCardle
Benjamin D Reichard
James R Swanson
Fishman Haygood Phelps Walmsley
Willis & Swanson LLP
201 St Charles Ave
46th Floor
New Orleans, LA 70170-4600

Attorney for Defendants Gail G Marquette and Numa L Marquette.

Michael J Stanley
Stanley Frank & Rose LLP
7026 Old Katy Road
Suite 259
Houston, TX 77024

Attorney for Defendants Hank Mills, Abraham Dubrovsky, Anthony Makransky, Aymeric Martinoia, Brent Simmons, Carol McCann, Charles Jantzi, Claudia Martinez, Donald Miller, Gary Haindel, Gerardo Meave-Flores, Gardy Layfield, James Fontenot, James D. Perry, Janie Martinez, John Schwab, Lori Bensing, Lou Perry, Lupe Northam, Mark Groesbeck, Michael Word, Miguel A. Garces, Miguel Valdez, Ray Deragon, Rolando H. Mora, Ron Clayton, Ryan Wrobleske, Shawn Morgan, Steven Hoffman, Susana Anguiano, Susano Cisneros, Teral Bennett, Tim Parsons, Flen Rock Company LLC, Fleniken San & Gravel Inc, Lyman L Fleniken, Jr, Robert BarrettMarty Karvelis, Donna Guerrero, John Fry, Don Cooper, David Whittemore, Dirk Harris, Jason Leblanc, Rodney Hadfield, Spencer Murchison, Carolyn Cranston, Luis Hermosa, Robert J Bruno, David Nanes and Christopher Thomas.

Brooks C White
Allen Law Firm PC
212 Center St
9th Floor
Little Rock, AR 72201

Attorney for Defendant Bobby G Wilkerson


The following former employee Defendants are unserved or *pro se*:

Juan Araujo
Monica Ardesi
Mauricio Avilies
Timothy Bambauer
Isaac Bar
Elias Barbar
Marie Bautista
Oswaldo Bencomo
Marc H. Bettinger
Stephen G. Blumenreich
Fabio Bramanti
Richard Bucher
Fausto Callava
Rafael Carriles
Naveen Chaudhary
Jany Cherovetzky
Bernard Cools-Lartigue
Jose Corder
Oscar Correa
James Cox
Ken Cimmins
Shawn M. Cross
James Cross
Andres Delgado
Pedro Delgado
Ana Dongilio
Torben Garde Due
Christopher Shannon Elliotte
Sean Duffy Neil Emery

Marina Feldman

Igncio Felise

Freddy Fiorillo

Rosalia Fontanals

Marc Gensch

Eric Gildhorn

Luis Giusti

Ramiro Gomez-Rincon

Joaquin Gonzales

Juan Carlos Gonzales

Vivian Guarch

John Gutfranski

Jon Hanna

Charles Hazlett

Roberto T. Helguera

Luis Hermosa

Daniel Hernandez

Alfredo Herraez

Marcos Iturriza

Faran Kassam

Joseph L. Klingen

Mayra C. Leon De Carrero

Humberto Lepage

Francois Lessard

James C. Li

Luis Felipe Lozano

David R. Lundquist

Iris Marcovich

Brent B. Milner

Alberto Montero

Russ Newton

Walter Orejuela

Alfosnso Ortega

Brandon R. Phillips

Eduardo Picon

Arturo Prum

Maria Putz

David Rappaport

Walter Ricardo

Julio Ruelas

Peter R. Ross
Tatiana Saldivia
Christopher K. Schafer
Morris Serrero
Jordan F. Sibler
Rochelle Sidney
Brent Simmons
Peter Siragna
Nancy Soto
David M. Stubbs
Mark V. Stys
Ana Tanur
Juan Carlos Terrazas
Aristade Treloar
Nicolas Valera
Mario Vieira
Evely Villalon
Chris Villemarette
Frans Vingerhoedt
Daniel Vitrian
Ihab Yassine
Bernard E. Young
Leon Zaidner

Investor Defendants in Case No. 3:09-CV-724-N:

Gaines D. Adams
Teresa Memun de Alfie
Algica S.A.
Patricia A. Allison
Jose Luciano Mendez Alonso
Amara Trust
Clyde Anderson
Barbara Anthony
Michael S. Asmer
Joseph Becker
Oscar Benedetti
Isabel Esther Benedetti de Izquerdo
Benito De Luca Trust
Jamie Cohen Benrey

Terry Beven
Kenneth Bird
Bluff Creek Redi-Mix, Inc.
Bordeaux Investments I CV
Bordeaux Investments III C.V.
Bordeaux Investments IX C.V.
Bordeaux Investments X C.V.
James W. Boring, Jr.
Ramon Alvarez Borondo
Betty Jo Brian
Hardee M. Brian
James E. Brown, Sr.
Stephen J. Burnham
Robert L. Bush
Elena Tron de Zepeda Carranza
Mauricio Zepeda Carranza
Gene Causey
Leopoldo Arosemena Cevasco
Dennis Childress
Joseph A. Chustz
Coffey Overseas Limited
Susan Perez de Cohen
Compania Minera Caopas Sa De CV
Corporation Nacional De Inversiones Sa De CV
Darrell D. Courville
Carolyn Cranston
Jodie F. Crawford
Robert B. Crawford, Jr.
Crayford Holdings Limited
Earl L. Crosby
Eugene L. Croxton, Jr.
John G. Denison
Kathy R. Denison
Deborah Dougherty
Kenneth W. Dougherty
Dorothy T. Duncan
Diane Dunn
DVX Capital
William E. Ensminger
Ayse Oya Erhan

Juergen Kurt Wagentrotz Ernst
Jose Maria Valle Escamez
Estate of James D. Simmons
Gwendolyn E. Fabre
Fayhill International
Joan A. Feucht
Richard S. Feucht
Lyman L. Fleniken, Jr.
Kendall Forbes
Deborah Forbes
Carlos Landeros Gallegos
Maria de Jesus Landeros Gallegos
Gordon C. Gill
Gold Wing Partners
Gold Wing Partners
Angelo Victor Goncalves
Arturo Ortega Gonzalez
German Luis Ortega Gonzalez
Maria Carolina Ortega Gonzalez
Robert Graham
Jason Graham
George R. Graves, III
Alice D. Greer
James B. Greer
Robert S. Greer
Jonnnie A. Griffith
Divo Milan Haddad
Sandra F. Harrell
Bette Joseph Heaslip
Herrera Holdings Ltd.
Michael R. Holcomb
John R. Holguin
Robert A. Houston
Infinitum Trust
Inmofybe S.A.
Intermedia Ltd.
International Petrochemical Sales Limited
Inversiones Patrick Robert P
Inversiones Varmol Trust
Inversiones Varmol Trust Care of Dr. Jorge Mario Vargas P.

IRM Investments, Inc.
Shenoor Jadavji
James E. Richardson Family Trust
Charles A. James
Benton B. Johnson
Jennifer Savoic Johnson
Martha Johnson
Timothy A. Johnson
William Bruce Johnson
Jonathan Larkin Stock Trust
Edward Hylton Jones
Shirley Gloria Jones
Tahsin Yilmaz Kalkavan
Kirkwell C.V.
Dennis L. Kirby
Kerry R. Kling
Krimich Ltd.
Roberto Gallardo Kuri
Teresa Michelle Lamke
Brett Landes
Don Landers
Dennis Lantrip
Jonathan Larkin
Felix Mario Hernandez Larrocoecha
James Ronald Lawson
Laura Jeanette N. Lee
Troy L. Lillie, Jr.
Brian U. Loncar
Sue A. Loncar
Lusky Investment Partnership, LP
Malton Overseas Ltd.
Marie Rochelle Sidney Martinez
Maria de Lourdes Martinez de Sidney
Charlie L. Massey
Robert Gray Matlock
Denise T. McKenzie
Kevin A. McKenzie
Billie Ruth McMorris
Ronald B. McMorris
Virginia McMorris

Dot G. Melder
Jack W. Melder
Raul Rodriguez Mendez
Henry A. Mentz, III
Fancoise Solange Mery
Josephine Mery
Herman J. Milligan, Jr.
Mississippi Polymers, Inc.
Samuel R. Moore
Martha W. Moore
Peggy Payne Moragne
Thomas J. Moran
J. Russell Mothershed
Muddy Water Holdings Ltd.
Murfield Investments, Inc.
Nairc B.V.
Nairc-Netherlands Antillean Ins.
Nairc-Netherlands Antillean Ins. and Reinsurance Company
Alnoor Nathoo
Claude M. Needham
Francis Nezianya
Nonna E Trust
Norfe S.A.
Maria Del Rocio Corona Odriozola
Arthur Ordoyne
Geneva Sue Palmer
Robert E. Palmer
Anthony G. Parker
Ronald W. Parker
Gerald S. Pasternak
Louise D. Patterson
Hannah Kay Peck
Larry W. Perkins
Monty M. Perkins
Patrick Loris Roger Petiot
Patrick Petiot
Pingyi He
Pingyi He Orrulian Wu De He
Pinot Holdings Limited
Jane M. Pridgen

William C. Provine
Provence Management Stichting I
Provence Management Stichting III
Provence Management Stichting IX
Provence Management Stichting X
Pupbubi Trust
Radium Company Ltd.
Antonio Sanchez Ramos
Alberto Javier Botello Reed
Dolores May Payer Rollar
George Joseph Rollar
Franz Konrad Rosenhaus
Salomon Dondich Rosenhaus
Mario Braun Russek
Charles R. Sanchez
Mamie C. Sanchez
Charles R. Sanchez, Sr.
Saxonia Foundation
Judith P. Simmons
James D. Simmons
Thomas W. Slaughter
Sleeping Dog Holdings, Ltd.
Archie Smith
Larry N. Smith
Charles E. Smith
Sociedad General de Inversiones
Robert Soule
Michael A. Speeg
James Stegall
Carol Stegall
Stichting Particulier Fonds El Tributo
Bruce Stone
Walter Stone
TA Trust
Silvia Guadalupe Tamez de Botello
John E. Taylor
Tebel Corporation
Bruce Thompson
Michelle Thompson
Michael J. Timmons

Arthur Torno
Jorge Emilio Garza Trevino
Terry N. Tullis
Thomas H. Turner
Thomas H. Turner
Lyda D. Tymiak
Maria Teresa San Sabastian De Valle
Ron Valentine
Judy A. Varnado
Anthony Ventrella
Galo Enrique Villamar Villafuerte
Claudio Enrique Hernandez Villalobos
Ines de Villamar
Jose Alberto Romero Viloria
Donna M. Vines
Juergen Kurt Wagentrotz
Waldman, Ltd.
Olivia S. Warnock
Emolyn L. Watts
Edith Irma Watts
Arthur R. Waxley, Jr.
Carl M. Webb, III
Luther D. Wells
Ronald E. Wells
Ronald E. Wells, Sr.
West Meadows Ltd.
Charles L. White
Sharon Whitmer
Kenneth Wilkewitz
Robert C. Williams
John E. Wilson
Risia Topp Wine
Matha Witmer
Gary Wood
Yenzo Investment, Inc.
Robert Young
Robert Young, Jr.

s/ Bradley W. Foster

**ATTORNEY FOR APPELLANTS
(115 FA DEFENDANTS)**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants believe that oral argument will be helpful to the Court. The issues presented in this appeal are of considerable and wide-ranging importance. For the first time, a federal receiver has been given standing to bring claims on behalf of third-party creditors. This is unprecedented, and it is directly contrary to two decisions of the United States Supreme Court, as well as decisions from the First, Second, Third, Sixth, Seventh, and Ninth Circuit Courts of Appeal. Appellants respectfully seek the opportunity to present oral argument addressing the district court's extraordinary expansion of federal receivership law.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ......................................... xxiii

TABLE OF CONTENTS.................................................................................... xxiv

TABLE OF AUTHORITIES ............................................................................... xxvi

STATEMENT OF JURISDICTION.......................................................................1

    I.     The Receiver's Alleged Basis for Jurisdiction in the District Court .........................................................................................................1

    II.    Basis for Jurisdiction in the Court of Appeals .....................................2

    III.   Filing Dates Establishing Timeliness of the Appeal ...........................3

STATEMENT OF THE ISSUES...........................................................................3

STATEMENT OF THE CASE...............................................................................3

    I.     The Receiver's Lawsuit.........................................................................3

    II.    The FA Defendants' Prior Appeal .......................................................6

    III.   The FA Defendants' Motion to Compel Arbitration ..........................10

STATEMENT OF THE FACTS ...........................................................................13

SUMMARY OF THE ARGUMENT .....................................................................18

STANDARD OF REVIEW ...................................................................................20

ARGUMENT ........................................................................................................20

    I.     THE RECEIVER'S CLAIMS MUST BE ARBITRATED AS A MATTER OF FEDERAL LAW .......................................................20

          A.    The Receiver Stands in the Shoes of the Stanford Entities ......20

          B.    The Receiver Is Bound by SGC's Arbitration Agreements ..............................................................................27

C.    The "Creditors" Also Signed Arbitration Agreements.............28

II.    THE RECEIVER'S CLAIMS MUST BE ARBITRATED UNDER FINRA RULES AND THE PARTIES' BINDING ARBITRATION AGREEMENTS........................................................31

    A.    FINRA Rules Require Arbitration.............................................31

    B.    The FAs' Promissory Notes Also Require Arbitration.............33

III.    THE DISTRICT COURT ERRED IN REFUSING TO ISSUE AN ORDER COMPELLING ARBITRATION .................................34

IV.    CONCLUSION ...................................................................................36

CERTIFICATE OF SERVICE ................................................................37

CERTIFICATE OF COMPLIANCE........................................................39

# TABLE OF AUTHORITIES

**Cases**

*Allegeart v. Perot*,
   548 F.2d 432 (2nd Cir. 1977) ...............................................................................25

*Banc One Acceptance Corp. v. Hill*,
   367 F.3d 426 (5th Cir. 2004) ........................................................................ 28, 35

*Brennan v. Aetna Life Ins. Annuity Co.*,
   No. Civ.A.3:00-cv-205BC, 2001 WL 167954 (N.D. Tex. Jan. 19, 2001) ...........33

*Capitol Life Ins. Co. v. Gallagher*,
   No. 94-1040, 1995 WL 66602 (10th Cir. Feb. 7, 1995) .....................................27

*Caplin v. Marine Midland Grace Trust Co.*,
   406 U.S. 416 (1972) ........................................................... 13, 18, 21, 26

*CFTC v. Kimberlyn Creek Ranch*,
   276 F.3d 187 (4th Cir. 2002) ...............................................................................5

*Commerce Park at DFW Freeport v. Mardian Const. Co.*,
   729 F.2d 334 (5th Cir. 1984) ...............................................................................8

*Cotten v. Republic National Bank of Dallas*,
   395 S.W.2d 930 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.)......................24

*Dean Witter Reynolds v. Byrd*,
   470 U.S. 213 (1985) ................................................................................... 28, 35

*Donell v. Kowell*,
   533 F.3d 762 (9th Cir. 2008) .......................................................... 13, 19, 21, 23

*Eberhard v. Marcu*,
   530 F.3d 122 (2d Cir. 2008) ................................................ 13, 18, 19, 21, 23, 25

*Fleming v. Lind-Waldock & Co.*,
   922 F.2d 20 (1st Cir. 1990) ............................................................ 13, 18, 19, 21

*Granny Goose Foods, Inc. v. Brotherhood of Granny Goose Foods, Inc.*,
   415 U.S. 423 (1974) .............................................................................................7

*Gulf Guar. Life Ins. Co. v. Connecticut General Life Ins. Co.*,
    304 F.3d 476 (5th Cir. 2002) ................................................................................30

*Hays v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3rd Cir. 1989) ...................................................................... 25, 27

*In re Stanford Group Co.*,
    273 S.W.3d 807 (Tex. App. – Houston [14th Dist.] 2008,
    orig. proceeding) ....................................................................................................34

*Janvey v. Alguire*,
    628 F.3d 164 (5th Cir. 2010) ..................................................................................9

*Javitch v. First Union Securities Inc.*,
    315 F.3d 619 (6th Cir. 2003) ........................................ 10, 13, 19, 21, 22, 24, 27

*Keytrade USA, Inc. v. Ain Temouchent M/V*,
    404 F.3d 891 (5th Cir. 2005) ................................................................................30

*Marion v. TDI Inc.*,
    591 F.3d 137 (3d Cir. 2010) ........................................................... 13, 18, 21, 25

*McCandless v. Furlaud*,
    296 U.S. 140, 56 S. Ct. 41 (1935) ......................................................... 13, 18, 21

*McGinness v. United States*,
    90 F.3d 143 (6th Cir. 1996) ..................................................................................24

*Meyers v. Moody*,
    693 F.2d 1196 (5th Cir. 1982) ..............................................................................24

*Millas v. Morgan Stanley & Co., Inc.*,
    No. 09-cv-0573-MJR, 2008 WL 5095917 (S.D. Ill. Dec. 1, 2008) ....................32

*Picard v. HSBC Bank PLC*,
    454 B.R. 25 (S.D.N.Y. 2011) ...............................................................................25

*Picard v. JPMorgan Chase & Co.*,
    -- B.R. --, 2011 WL 5170434, at *9 (S.D.N.Y. Nov. 1, 2011)..............................26

*Reneker v. Offill*,
    No. 3:08–CV–1394–D, 2009 WL 804134 (N.D.Tex. Mar. 26, 2009)................26

*Scholes v. Lehmann,*
  56 F.3d 750 (7th Cir. 1995) ...................................................... 13, 19, 21, 22, 23

*Shearson/American Express, Inc. v. McMahon,*
  482 U.S. 220 (1987) ............................................................................28

*Sherer v. Green Tree Servicing LLC,*
  548 F.3d 379 (5th Cir. 2008) ............................................................20

*Southland Corp. v. Keating,*
  465 U.S. 1 (1984) ....................................................................... 28, 34

*Subway Equip. Leasing Corp. v. Forte,*
  169 F.3d 324 (5th Cir. 1999) ............................................................30

*Troelstrup v. Index Futures Group, Inc.,*
  130 F.3d 1274 (7th Cir.1997) ...................................................... 19, 23

*Webb v. Investacorp, Inc.,*
  89 F.3d 252 (5th Cir. 1996) ..............................................................35

*Williams v. Imhoff,*
  203 F.3d 758 (10th Cir. 2000) ..........................................................33

*Wuliger v. Mfr's Life Ins. Co.,*
  567 F.3d 787 (6th Cir. 2009) .................................................. 13, 19, 27

**Statutes**

28 U.S.C. § 754 ....................................................................................1

9 U.S.C. § 3 .........................................................................................2

9 U.S.C. § 4 ................................................................................. 1, 2, 35

9 U.S.C. §§ 16(a)(1)(A) & (B) ..............................................................2

**Rules**

FINRA Bylaws, Art. V, section 2 ..........................................................32

FINRA CODE OF ARBITRATION PROCEDURE FOR INDUSTRY DISPUTES
  Rule 13200(a) ....................................................................... 17, 27, 31

FINRA IM-13000 ......................................................................................... 17, 27, 32

FINRA MANUAL Rule 0140(a) ........................................................................ 17, 32

FINRA Rule 13100(r) ...........................................................................................32

## STATEMENT OF JURISDICTION

**I.     The Receiver's Alleged Basis for Jurisdiction in the District Court**

The Receiver asserts that the district court has subject matter jurisdiction over this proceeding pursuant to section 22(a) of the Securities Act of 1933 (15 U.S.C. § 77v(a)), Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa), and 28 U.S.C. § 754.

The Receiver, however, stands in the shoes of Stanford Group Company ("SGC"), and he is obligated to arbitrate all claims asserted against the company's former financial advisors.  The Defendant FAs have filed a motion to compel arbitration pursuant to FINRA rules, their Forms U-4, and the terms of their written agreements with SGC.  *See* R. 1243-67.  Pursuant to section 4 of the Federal Arbitration Act ("FAA"), the district court's jurisdiction over this dispute is limited to the issuance of an order compelling arbitration or the exercise of other powers explicitly provided for by the FAA.  *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court which, *save for such agreement,* would have jurisdiction . . . [over] a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . .") (emphasis added).

## II.    Basis for Jurisdiction in the Court of Appeals

This is an interlocutory appeal from an order denying the FA Defendants' motions to compel arbitration.  *See* District Court Order dated August 26, 2011 (S.R.7 3518-3525).[1]

The Defendant FAs are seeking to enforce their arbitration agreements in accordance with FINRA rules, their Forms U-4, and the terms of their written agreements with SGC.  Accordingly, they have filed motions to compel arbitration of all claims asserted in the Receiver's Second Amended Complaint pursuant to 9 U.S.C. § 4, and to stay all proceedings in this action against the moving Defendants pursuant to 9 U.S.C. § 3.  *See* R. 1243-1712, R. 2896-2904, R. 3293-3301 (Doc. ## 201, 203, 383, 397 and supporting appendices).

Pursuant to the requirements of the Federal Arbitration Act, the FA Defendants are hereby appealing the District Court's August 26, 2011 order "refusing a stay of any action under section 3 of this title" and  "denying a petition under section 4 of this title to order arbitration to proceed."   See 9 U.S.C. §§ 16(a)(1)(A) & (B).

---

[1]    References to the Record on Appeal originally filed in Case No. 10-10617 will be denoted by "R." followed by the page number(s).  References to the seventh, eighth, and ninth supplements to the record created by the District Court will be denoted as "S.R.7," "S.R.8," or "S.R.9," respectively, followed by the page number(s).  These references will be followed by the documents' docket number in the form "(Doc. #__)."  References to documents incorporated into the record by motions to supplement in Case No. 10-10617 on July 6, 2010, and July 30, 2010 will be denoted as "S.R.(10761)."  References to the prior record on appeal in Case No. 09-10761 will be denoted by "ROA" followed by the page number(s).  References to the September 10, 2009 supplemental record containing documents from the SEC Lawsuit will be denoted by "S. ROA(298)" followed by the page number(s).

### III.    Filing Dates Establishing Timeliness of the Appeal

The district court entered an order denying the employee defendants' motions to compel arbitration on August 26, 2011.  S.R.7 3518-3525 (Doc. # 688).  The FA Defendants filed a timely Notice of Appeal on August 31, 2011.  S.R.7 3533-3535 (Doc. # 690).

**STATEMENT OF THE ISSUES**

1.    Does a federal receiver have standing to bring claims on behalf of third-party creditors?

2.    Can a federal receiver avoid the receivership entity's binding arbitration agreements?

**STATEMENT OF THE CASE**

This is an appeal from an order denying the FA Defendants' motion to compel arbitration.  The following procedural history is pertinent to the current appeal:

### I.    The Receiver's Lawsuit

This case is ancillary to *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*, case number 3:09-CV-298-N in the Northern District of Texas, Dallas Division (the "SEC lawsuit").  In the SEC lawsuit, the district court appointed Appellee Ralph S. Janvey as the Receiver for Stanford International Bank, Ltd., Stanford Group Company, and other Stanford entities.

3

In February 2009, the district court froze all accounts introduced through Stanford Group Company ("SGC"), an SEC and FINRA registered broker-dealer, and it directed the Receiver to take custody and control of those accounts. The frozen accounts included customer-owned accounts, plus the personal and retirement accounts of Stanford's employee financial advisors. The Receiver began releasing investor accounts over the next few weeks and months, but he refused to release the FAs' accounts even after he terminated their employment.

In April 2009, the Receiver sued 66 former Stanford financial advisors to recover a portion of their employment compensation. S. ROA 435-64. Subsequently, without seeking leave of Court, the Receiver amended or supplemented his complaint at least six times, adding 263 additional defendants, altering his legal theories, and increasing the amounts he seeks to recover.

In June 2009, the district court issued an order stating that if the Receiver wished to maintain the asset freeze for investor accounts, he must assert claims against the individual investors along with "claims for prejudgment attachment." *See* S. ROA(298) 2042-43. Based on the district court's order, the Receiver sued hundreds of investors as relief defendants and requested a preliminary injunction to continue the freeze of their accounts. After a hearing, the district court ruled that the freeze could continue only as to purported CD interest payments received by the investors. *See* ROA 477-79.

On appeal, this Court held that the investors were not proper relief defendants because they had a legitimate ownership interest in their frozen accounts, even if those accounts contained SIB CD proceeds.  Accordingly, the Court ordered the Receiver to release the investors' frozen accounts.  *See Janvey v. Adams*, 588 F.3d 831 (5th Cir. 2009).

On the same day that the Fifth Circuit issued the foregoing opinion, the Receiver filed an amended complaint against the financial advisors, naming dozens of new defendants.  *See* R. 492-529 (Doc. # 118).  In this November 2009 complaint, the Receiver continued to sue the former employees as "relief defendants."  The Fifth Circuit's opinion, however, clearly prohibited the Receiver from bringing "relief defendant" claims against former employees.  *See Janvey v. Adams*, 588 F.3d at 834 ("[R]eceipt of funds as payment for services rendered to an employer constitutes one type of ownership interest and would preclude proceeding against the holder of the funds as a nominal defendant.") (quoting *CFTC v. Kimberlyn Creek Ranch*, 276 F.3d 187, 192  (4th Cir. 2002)).

The Receiver subsequently dropped his relief defendant claims, but he has continued to cut corners in his complaint, lumping more than 300 former employees together without any discussion of the specific claims asserted against each individual defendant.  The Receiver is now asserting direct claims against the FA Defendants for fraudulent transfer and unjust enrichment.  These claims are

subject to mandatory arbitration, and the FA Defendants have filed a motion to compel arbitration and stay all proceedings in the district court pursuant to the Federal Arbitration Act.  *See* R. 1243-67 (Doc. # 201).

## II.     The FA Defendants' Prior Appeal

Because the Fifth Circuit's November 13, 2009 opinion "gives rise to arguments about the continuation of the freeze as to former employees," the SEC, the Receiver, and the FAs compromised on a partial release of the FAs' frozen accounts and a timetable for the complete release of FA accounts.  *See* R. 1119-26 (Doc. # 174).  On January 15, 2010, the Court entered an order authorizing an immediate partial release of FA accounts, followed by a complete release on April 1, 2010 absent further order of the Court.  *See* R. 1860-61 (Doc. # 214).

On March 31, 2010, the FAs, the SEC, and the Receiver agreed to a further partial release and a second, short extension of the freeze on the remaining accounts.  On April 6, 2010, based on the parties' agreement, the district court ordered a further partial release (which never took place), and ordered that all frozen accounts be released on June 1, 2010.  R. 2880-81 (Doc. # 379).

Two weeks after negotiating the March 31st agreement, the Receiver filed a TRO application and a motion for attachment and/or preliminary injunction seeking to continue the asset freeze until the conclusion of this suit.  *See* R. 2958-92 (Doc. #392).

On April 23, 2010, the district court denied the Receiver's TRO Application and established an expedited briefing schedule for the preliminary injunction motion.  R. 3289-91 (Doc. # 395).  The court acknowledged that "[t]he notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition."  R. 3290 n.1 (Doc. # 395) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Granny Goose Foods, Inc.*, 415 U.S. 423, 432 n.7 (1974)).  Nevertheless, the court indicated that it would not conduct a hearing on the Receiver's motion for a preliminary injunction, but would issue a ruling based solely on the parties' briefs.

In its April 23, 2010 order, the district court stated that it intended to rule on the motion for preliminary injunction before June 1.  R. 3290 (Doc. # 395).  However, on May 28, 2010, the court deferred its ruling on the Receiver's injunction request.  Instead, the court granted the Receiver's previously-denied TRO application *sua sponte*, so that it would have additional time to review the briefs and prepare an opinion.  R. 4141 n.2 (Doc. # 448).

On June 10, 2010, the district court entered a preliminary injunction freezing the personal assets of former Stanford employees.  R. 4268 (Doc. # 456).  The FA Defendants filed an interlocutory appeal, arguing *inter alia* that the court lacked

the power to enter a preliminary injunction because the Receiver's claims are subject to arbitration.

On appeal, the FA Defendants and the Receiver agreed that it would be more efficient for the Fifth Circuit to address the threshold question of arbitrability at the same time that it considered the propriety of the injunction.[2] *See Commerce Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 340 (5th Cir. 1984) (noting that Supreme Court "expressly approved the court of appeals' *sua sponte* determination that the underlying dispute was arbitrable").

In support of their motion to compel arbitration, the FA Defendants argued that the Receiver stands in the shoes of SGC, and he is therefore obligated to arbitrate all claims asserted against the company's former financial advisors pursuant to FINRA rules, the defendants' Forms U-4, and the terms of their written agreements with SGC.

In the Fifth Circuit's initial opinion dated December 15, 2010, the Court held that "[t]he Receiver's claims are not subject to arbitration because he is suing

---

[2]    *See* Appellant's Brief in Case No. 10-10617 (filed on 7/13/10), at 19 ("The FA Defendants' motion to compel arbitration has been fully briefed, and the issues it presents are intertwined with the preliminary injunction. This Court should address all of these issues now. There is no reason for this Court to defer its consideration of the motion to compel and require the FA Defendants to pursue a second interlocutory appeal under 9 U.S.C. § 16."); Appellees' Brief in Case No. 10-10617 (filed on 7/28/10), at 18 n.7 ("The arbitration issue has been fully briefed by the parties on appeal. Because any ruling by the district court on this issue would be subject to de novo review by the Court, there is no reason for this Court to delay its ruling. A second appeal of this issue would only serve to deplete funds in the Receivership Estate and needlessly consume judicial resources.").

on behalf of estate creditors." *Janvey v. Alguire*, 628 F.3d 164, 185 (5th Cir. 2010). The Court stated that Stanford's third-party creditors "are not party to the arbitration agreements and therefore [the Receiver] is not bound by the arbitration agreements." *Id.* This decision was unprecedented and contrary to two opinions of the United States Supreme Court, as well as the First, Second, Third, Sixth, Seventh, Ninth, and Tenth Circuits. To put it simply, a federal receiver *cannot* sue on behalf of creditors. He lacks the legal standing to bring such claims.

On January 4, 2011, the FA Defendants filed a petition for rehearing *en banc*. The Fifth Circuit subsequently asked for additional briefing on the petition for rehearing. On July 22, 2011, the Court withdrew its prior opinion and issued a substitute opinion affirming the district court's preliminary injunction and remanding the motion to compel arbitration to the district court "for a ruling in the first instance." Fifth Circuit Case No. 10-10617, slip op., at 29.

As a result, this Court's December 15, 2010 opinion is no longer good law. Indeed, the Court's withdrawal of this opinion, six months after the filing and briefing of a petition for rehearing *en banc*, is an indication that the Fifth Circuit does *not* believe that Mr. Janvey has standing to bring claims on behalf of third-party creditors or the ability to tap-dance around his arbitration agreements. The Court's initial decision was contrary to 75 years of federal law. The opinion was withdrawn for good reason.

### III.    The FA Defendants' Motion to Compel Arbitration

The Receiver does not dispute that: (1) the Defendant FAs have binding arbitration agreements with Stanford Group Company ("SGC"); (2) SGC is a FINRA member; and (3) FINRA's rules specifically require its members to arbitrate all disputes with "associated persons" such as the Defendant FAs.  Indeed, the Receiver has never challenged the existence of the arbitration agreements, the validity of the arbitration agreements, or the scope of the arbitration agreements. And he concedes that "FINRA arbitration rules … would apply to any arbitration here."  Receiver's Brief in Case No. 10-10617, at 29.

Based on the foregoing, the FA Defendants assert that the Receiver -- as the legal successor to SGC -- is required to arbitrate his claims under FINRA rules, the parties' agreements, the Federal Arbitration Act, and binding federal precedent. *See, e.g.*, *Javitch v. First Union Securities Inc.*, 315 F.3d 619, 627 (6th Cir. 2003) (receiver "is bound to the arbitration agreements to the same extent that the receivership entities would have been absent the appointment of the receiver").

In response, the Receiver has pieced together a tangled web of arguments for the proposition that he can ignore SGC's arbitration agreements.  The Receiver's arguments have shifted over time, but he now makes the following argument:  The Receiver argues that he is not bound by SGC's arbitration agreements because he is "suing on behalf of and for the benefit of [third-party] creditors, none of whom

have entered into an arbitration agreement with Appellants."[3]  *See* Receiver's Brief in Case No. 10-617, at 12; Receiver's Post-Remand Brief, S.R.7 3127-3151 (Doc. # 676).  As discussed below, this statement is wrong on two counts.  First, the Receiver stands in the shoes of Stanford as opposed to third-party creditors.  *See infra*, at 21-27.  Second, the third-party creditors *have* entered into arbitration agreements with Appellants.  *See infra*, at 29-31.

After this Court remanded the FA Defendants' motion to compel arbitration to the district court, the parties submitted a proposed briefing schedule to the court.  *See* S.R.7 2930-2936 (Doc # 650).  The district court, however, rejected the proposed briefing schedule and ordered all parties to file supplemental briefs, limited to ten (10) pages, by August 19, 2011.  S.R.7 2952  (Doc # 657).  The FA

---

[3]     Over time, the Receiver has articulated at least four different, and inconsistent, theories as to whom he purports to represent in this lawsuit:

- On his official "Stanford Financial Group Receivership" website, the Receiver stated that he had filed suit "to recover commissions, front-end loans and other CD-related compensation that *Stanford Group Company* paid to certain former financial advisors."  R. 1348-49 (Doc. # 202) (emphasis added).
- In the Second Amended Complaint, the Receiver alleges that the "Stanford Defendants" *collectively* transferred "CD Proceeds" to the FAs in the form of compensation.  R. 1006-07, 1013-14, 1016, 1018-19 (Doc. # 156) at ¶¶ 4, 28, 30, 34, 41; R. 2460 (Doc. # 315).
- In his response to the FA Defendants' motion to compel arbitration, the Receiver argued that he "is asserting his claims against the Former Employees on behalf of *[Stanford] creditor entities* to recover funds the debtor entities paid …."  R. 2463-64 (Doc. # 316) (emphasis added).
- And now, the Receiver claims that he is suing "on behalf of and for the benefit of *[third-party] creditors*."  Receiver's Brief in Case No. 10-10617, at 12 (emphasis added).

Defendants subsequently requested an extension of their briefing deadline (S.R.7 2974-2977 (Doc. #658)), and they were granted an extension until August 23, 2011.  S.R.7 215.

Accordingly, the Receiver filed his supplemental brief on August 19, 2011 (S.R.7 3127-3131 (Doc. # 676)), and the FA Defendants filed their supplemental brief on August 23, 2011.  S.R.7 3182-3193 (Doc. # 680).  The FA Defendants focused on the same receivership standing arguments they had made previously in connection with this Court's *en banc* reconsideration of its December 15, 2010 opinion.  *Id.*; *see also* Petition for Rehearing En Banc (filed on January 4, 2011) in Case No. 10-10617.  Three days later, on August 26, 2011, the district court issued an order denying the FA Defendants' motion to compel arbitration.  S.R.7 3518-25 (Doc. # 688).

The district court held that "the Receiver represents creditors defrauded by the Stanford Defendants' scheme … As such, he is not a party to or bound by the Employee Defendants' arbitration agreements."  *Id.* at 3524-25.  In doing so, the court adopted the reasoning contained in the Fifth Circuit's now-withdrawn December 15, 2010 opinion.  *Id.* at 3520-24.  ("While the Fifth Circuit has withdrawn the portion of its [December 15, 2010] opinion dealing with arbitration, this Court nonetheless finds its logic and reasoning convincing.  Accordingly, the Court adopts that reasoning and denies the motions.").  Indeed, the district court

did not conduct any independent analysis of the issues at all. Instead, "[r]ather than reinvent the wheel or attempt to paraphrase the language of the opinion, the Court with deference and attribution to the panel adopts the language and reasoning of the withdrawn opinion regarding arbitrability as its own." *Id*. at 3520.

The district court did not acknowledge or address the arguments raised in the FA Defendants' supplemental brief, and it did not cite or attempt to distinguish any of the following cases holding that federal receivers lack standing to assert claims on behalf of third-party creditors: *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972); *McCandless v. Furlaud*, 296 U.S. 140, 56 S. Ct. 41 (1935); *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990); *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008); *Marion v. TDI Inc.*, 591 F.3d 137 (3d Cir. 2010); *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 625 (6th Cir. 2003); *Wuliger v. Mfr's Life Ins. Co.*, 567 F.3d 787 (6th Cir. 2009); *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995); *Donell v. Kowell*, 533 F.3d 762, 777 (9th Cir. 2008).

## STATEMENT OF THE FACTS

Ralph Janvey, in his capacity as the Receiver for Stanford Group Company ("SGC"), has sued 329 former SGC employees (including the 115 FA Defendants represented by the undersigned counsel) seeking to "claw back" the employment compensation they received from SGC. R. 1005-43 (Doc. # 156). SGC is registered as a broker-dealer with the Securities and Exchange Commission

("SEC") and is a member of the Financial Industry Regulatory Authority ("FINRA").   R. 1311-46 (Doc. # 202) S.R.(10617), Doc. #952 in 3:09-cv-0298.

The Receiver does not specify in the Second Amended Complaint which Stanford entity paid the compensation he seeks to recapture, but he does so on his official "Stanford Financial Group Receivership" website.   In describing a prior version of his complaint that is substantially similar to the current one, the Receiver states that he filed the suit "to recover commissions, front-end loans and other CD-related compensation that *Stanford Group Company* paid to certain former financial advisors.   These amounts were paid to the financial advisors as compensation . . . ." R. 1349 (Doc. # 202) (emphasis added).

In his earlier complaints, the Receiver sought disgorgement under a "relief defendant" theory.   Following the Fifth Circuit's November 13, 2009 opinion addressing similar claims brought against innocent investors, the Receiver was forced to recognize that the Defendant FAs had a legitimate claim to the compensation they received from SGC, and he abandoned his relief defendant theories. *See* R. 1008 (Doc. # 156), at ¶ 10.   The Receiver now resorts to vague claims of fraudulent transfer and unjust enrichment, while ignoring FINRA rules and contractual requirements that obligate him to submit his claims exclusively to FINRA arbitration.

The Receiver is seeking to recover compensation (and even loans) covering multiple years, much of which had nothing whatsoever to do with the sale of Stanford CDs.[4]    The Receiver seeks to recover the following categories of compensation from Stanford's former employees:  (1) up-front payments the FAs received in exchange for moving their businesses to SGC, accompanied by agreements containing arbitration provisions; (2) "SIBL Commission;" (3) "SIBL Quarterly Bonuses;" (4) Branch Managing Director Quarterly Compensation; (5) Performance Appreciation Rights ("PARs") Payments; and (6) Severance Payments.  From the 115 FA Defendants, the Receiver seeks to recover a total of approximately $111 million.  R. 1034-43 (Doc. # 157).

The Receiver asserts that the FAs should disgorge their employment compensation because the funds they received from SGC allegedly came from SIB, which was operating a Ponzi scheme.[5]  R. 1014 (Doc. # 156).  The Receiver

---

[4]    Indeed, 20 of the 115 FA Defendants never received a dollar from the sale of a Stanford CD, and 9 others earned less than $700 in CD commissions.  R. 1034-43 (Doc. # 156).  The Receiver is suing one of them for just $100 in CD commissions.  *Id.*

[5]    Like their clients, the FA Defendants were deceived by apparent lies, fraud, and falsified documents into believing that the SIB CD was a low-risk, fixed-income investment with a solid track record of success that offered a good return for their clients.  R. 1276-77 (Doc. # 202).  Indeed, the Securities and Exchange Commission has publicly stated that Allen Stanford, James Davis, and Laura Pendergest-Holt "lied to financial advisors."  *See* S. ROA(298) 107-08 (Doc. #48) in Case No. 3:09-cv-00298-N.  Many of the FAs personally invested in the SIB CDs themselves.  For example, Mr. Robinson invested $650,000 in the SIB CDs -- far more than he received in SIB CD commissions -- and like many other investors, he lost his entire investment.  R. 1278 (Doc. # 202) at ¶ 23.

claims that the sole purpose of the FAs was to sell SIB CDs, and that SGC was nothing more than the means by which SIB obtained CD investments. This is untrue -- the Receiver has expressly admitted that 60+% of SGC's revenues in 2008 came from non-CD brokerage activities. Supp. R. (Doc. #336) in 3:09-cv-298-N).

Before Stanford was shut down in February 2009, SGC had an outstanding reputation as a specialty brokerage firm that recruited some of the best and brightest high-end financial advisors from large wire-houses like Smith Barney, Deutsche Bank, Merrill Lynch, and Goldman Sachs. R. 1271 (Doc. # 202) at ¶¶ 2-3; *Id.* at 1285. These FAs were not recruited simply to sell SIB CDs; they provided full-service brokerage services to their clients. *Id.* at 1255; *Id.* at 1272 ¶ 5.

Furthermore, the majority of the compensation the Receiver seeks to recover from the FAs -- upfront loan payments -- had nothing to do with SIB CD sales. Upfront payments are a common form of compensation paid to FAs when they move brokerage firms. The upfront payments received by the FAs here, which constituted consideration for the FAs' books of business built upon decades of work, were calculated from the commissions earned by the FAs at their prior firms using percentages common in the industry. These payments, by definition, did not

take into account any SIB CD sales. *Id*. at 1275 ¶ 15; R. 3489 (Doc. # 414) (63:11-18).

At no time were the FA Defendants employees of SIB, nor did they ever receive any payments from SIB. The FAs were employed by SGC, and they received all of their compensation from SGC. They received standard employee paychecks from SGC, from which tax withholdings were made. R. 1278 (Doc. # 202) at ¶ 22.

SGC was, and still is, a member of FINRA and is bound by the FINRA requirement to arbitrate all disputes with its registered employees. FINRA MANUAL Rule 0140(a) ("The Rules shall apply to all members and persons associated with a member. Persons associated with a member shall have the same duties and obligations as a member under the Rules."). FINRA rules provide that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: members; members and associated persons; or associated persons." FINRA CODE OF ARBITRATION PROCEDURE FOR INDUSTRY DISPUTES Rule 13200(a). Indeed, it is a violation of FINRA Rules for SGC to fail to submit its disputes with the FAs to arbitration. *See* FINRA IM-13000.

Additionally, the FA Defendants' upfront loan payments were documented with Promissory Notes that included substantially the same broad-form arbitration

clause:  "Borrower hereby agrees that any controversy arising out of or relating to this Note, or default of this Note, shall be submitted to and settled by arbitration pursuant to the constitutions, by-laws, rules and regulations of the Financial Industry Regulatory Authority (FINRA) [or its predecessor, the NASD] in the local area of the office the Borrower is employed [or in some cases, "of the principal office"]."  R. 1303 (Doc. # 202).

## SUMMARY OF THE ARGUMENT

The Receiver seeks to avoid arbitration under the theory that he acts for third-party creditors rather than the debtor in receivership.  *See* S.R.7 3127-31 (Doc. # 676).  This argument is fundamentally flawed.

To put it simply, a federal receiver *cannot* assert claims on behalf of third-party creditors.  This rule is axiomatic, and it is supported by an unbroken line of authority dating back 75 years.  No federal appellate court has *ever* permitted a federal receiver to assert claims belonging to creditors.  Indeed, the Receiver's arguments have been squarely rejected by the Supreme Court and the First, Second, Third, Sixth, Seventh, and Ninth Circuit Courts of Appeal.  *See Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972); *McCandless v. Furlaud*, 296 U.S. 140, 56 S. Ct. 41 (1935); *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990); *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008); *Marion v. TDI Inc.*, 591 F.3d 137 (3d Cir. 2010); *Javitch v. First Union Sec., Inc.*, 315 F.3d

619, 625 (6th Cir. 2003); *Wuliger v. Mfr's Life Ins. Co.*, 567 F.3d 787 (6th Cir. 2009); *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995); *Donell v. Kowell*, 533 F.3d 762, 777 (9th Cir. 2008).

The rule is clear: "[T]he authority of a receiver is defined by the entity or entities in the receivership." *Eberhard*, 530 F.3d at 132. A receiver "can only make a claim which the corporation could have made." *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990). The Receiver argues that fraudulent transfer claims are exempt from this iron-clad rule. They are not. In *Eberhard*, the Second Circuit emphasized that "receivers have standing to pursue fraudulently conveyed assets only when one of the entities in receivership is a creditor of the transferor." *Eberhard*, 530 F.3d at 132 (citing Judge Posner's opinions in *Scholes* and *Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274 (7th Cir.1997)). The Ninth Circuit likewise has concluded that a federal receiver's UFTA claims belong to the debtor rather than third-party creditors. *Donell*, 533 F.3d at 777.

This is the crux of the case. The Receiver's efforts to avoid arbitration are wholly dependent on his third-party standing arguments. And the Receiver's standing arguments have been unanimously rejected by the federal judiciary. Ultimately, the Receiver is on the horns of a dilemma: If he is asserting claims on behalf of the receivership entities, he must arbitrate. And if he is purporting to

assert claims on behalf of creditors, his complaint must be dismissed for lack of standing.  There is no other choice.

## STANDARD OF REVIEW

The FA Defendants' motion to compel arbitration is subject to *de novo* review.  *Sherer v. Green Tree Servicing LLC,* 548 F.3d 379, 381 (5th Cir. 2008) ("We review *de novo* a district court's denial of a motion to compel arbitration.").

## ARGUMENT

## I.    THE RECEIVER'S CLAIMS MUST BE ARBITRATED
##       AS A MATTER OF FEDERAL LAW

A federal receiver cannot assert claims on behalf of third-party creditors. This rule is axiomatic, and it is supported by an unbroken line of authority dating back 75 years.  Since 1935, no federal appellate court has ever permitted a federal receiver to assert claims belonging to creditors.

### A.    The Receiver Stands in the Shoes of the Stanford Entities

The United States Supreme Court has twice held – first in 1935 and again in 1972 – that a federal receiver stands in the shoes of the debtor and cannot assert claims on behalf of third-party creditors.  "Since 1935 it has been well established that the plaintiff in his capacity of receiver has no greater rights or powers than the corporation itself would have. . . .  In other words, the receiver can only make a claim which the corporation itself could have made." *Fleming v. Lind-Waldock &*

*Co.*, 922 F.2d 20, 25 (1st Cir. 1990) (citing *McCandless v. Furlaud*, 296 U.S. 140, 148 (1935)).

In *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416 (1972), the Supreme Court reaffirmed this rule: "the [*McCandless*] opinion by Mr. Justice Cardozo clearly emphasizes that the receiver in that case was suing on behalf of the corporation, not third parties." *Caplin*, 406 U.S. at 429.

Every circuit court to consider the issue has followed this long-standing rule. *See Fleming*, 922 F.2d at 25 ("the receiver can only make a claim which the corporation could have made"); *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) ("[T]he authority of a receiver is defined by the entity or entities in the receivership."); *Marion v. TDI Inc.*, 591 F.3d 137, 147 (acknowledging rule that an "equity receiver may sue only to redress injuries to the entity in receivership") (3d Cir. 2010); *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 625 (6th Cir. 2003) ("Because they stand in the shoes of the entity in receivership, receivers have been found to lack standing to bring suit unless the receivership entity could have brought the same action."); *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) ("an equity receiver may sue only to redress injuries to the entity in receivership"); *Donell v. Kowell*, 533 F.3d 762, 777 (9th Cir. 2008) (following *Scholes*).

No federal appellate court has *ever* permitted a federal receiver to assert claims on behalf of third-party creditors. The Receiver confuses bringing a suit for

the *benefit* of creditors (i.e., a suit to secure funds that will ultimately be paid to creditors) with bringing a suit on *behalf* of creditors (i.e., standing in the creditors' shoes). This represents a misunderstanding of the law. Even if the Receiver is acting for the ultimate benefit of Stanford investors and other creditors, he can only assert claims that belong to the entities in receivership. *See, e.g., Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 627 (6th Cir. 2003) ("[A]lthough the stated objective of a receivership may be to preserve the estate for the benefit of the creditors, that does not equate to a grant of authority to pursue claims belonging to the creditors.").

The Receiver's contrary arguments are logically flawed and contrary to federal law. In a nutshell, the Receiver makes the following argument: (1) case law permits him to assert fraudulent transfer claims; but (2) if he were asserting fraudulent transfer claims on behalf of the company, he would be subject to an *in pari delicto* defense; and therefore (3) he must be acting for someone other than the company. *See* Receiver's Brief in Case No. 10-10617, at 12-13, 18-26. This argument, however, has been squarely rejected by the Second, Seventh, and Ninth Circuits.

In *Scholes*, the Seventh Circuit held that a receiver can bring fraudulent transfer claims on behalf of the receivership entities to recover assets unlawfully dissipated by individual wrongdoers, and further, that the doctrine of *in pari*

*delicto* does not bar such claims. *Scholes*, 56 F.3d at 754. Under the reasoning of *Scholes*, the Receiver could not pursue fraudulent transfer claims on behalf of Allen Stanford, but he does have standing to pursue such claims on behalf of Stanford Group Company. *Id.* ("The appointment of the receiver removed the wrongdoer from the scene. The corporations were no more Douglas's evil zombies. Freed from his spell they became entitled to the return of the moneys ...")

In *Eberhard*, the Second Circuit likewise held that "receivers have standing to pursue fraudulently conveyed assets . . . when one of the entities in receivership is a creditor of the transferor." *Eberhard*, 530 F.3d at 132 (citing Judge Posner's opinions in *Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274 (7th Cir.1997) and *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir.1995)). The Ninth Circuit also has concluded that a federal receiver's UFTA claims belong to the debtor rather than third-party creditors. *Donell*, 533 F.3d at 777.

The linchpin of the Receiver's circular argument -- that he could only seek fraudulently transferred funds if he were acting for the creditors, and therefore he *must* be acting for the creditors -- is therefore at odds with the Seventh Circuit's analysis in *Scholes* and the Second Circuit's holding in *Eberhard*.[6]

---

[6]    The Receiver knows this, of course. In his initial response to the motion to compel arbitration, the Receiver cited both *Scholes* and *Eberhard* for the proposition that a "receiver appointed over both debtor/transferor entities and creditor entities could assert fraudulent transfer

The Fifth Circuit's now-withdrawn December 15th opinion relied on *state* receivership cases, as opposed to the *federal* receivership authority cited above. *See* Slip Op., at 28 n. 10 (citing *McGinness v. United States*, 90 F.3d 143 (6th Cir. 1996) (receiver appointed by Lake County Court of Common Pleas, Ohio); Slip Op., at 29 (citing *Meyers v. Moody*, 693 F.2d 1196 (5th Cir. 1982) (receiver appointed in Alabama state court) and *Cotten v. Republic National Bank of Dallas*, 395 S.W.2d 930 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.) (receiver appointed in Texas state court)). *See also* Receiver's Supp. Brief, at 2 (citing *Meyers v. Moody*). But state court receivers have entirely different, and often greater, powers than federal receivers. *See, e.g., Javitch*, 315 F.3d at 626-27 (contrasting Ohio state court receiver who had standing to bring actions on behalf of creditors with federal receiver who lacked such standing). This is a critical error.[7]

---

claims on behalf of [the] creditor entities."  R. 2463-4 (Doc. # 316).  The Receiver abandoned this argument only after the FA Defendants pointed out in their reply brief that the Receiver unequivocally asserts that the various Stanford entities operated as a single business enterprise. R. 2786-2790 (Doc. # 364).  To the extent necessary (i.e., to the extent the Receiver attempts to revive his previously-abandoned arguments regarding claims that he is allegedly asserting on behalf of non-SGC Stanford entities), the FA Defendants hereby adopt and incorporate their prior arguments.  R. 2789-2790 (Doc. # 364).

[7]   In a related case currently pending before the Fifth Circuit (Janvey v. Democratic Senatorial Campaign Committee, Case No. 11-10704), the litigants also dispute the implications of this Court's withdrawal of its December 15, 2010 opinion.  *See* Appellant's Brief in Case No. 11-10704, at 18-22; Appellee's Brief, at 9-10.  The FA Defendants respectfully submit that these issues should be addressed in the present case first.  This case is a direct follow-up to Case No. 10-10617, and it makes sense to address the carry-over standing issue here.

The Receiver also relies on *bankruptcy* cases (S.R.7 3129 (Doc. # 676)), but bankruptcy trustees have statutorily-created powers that do not apply to court-appointed receivers.  The Second and Third Circuits have clearly made this distinction.  In *Hays v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153-54 (3rd Cir. 1989), the Third Circuit held that a bankruptcy trustee's fraudulent transfer claims were not subject to arbitration.  But a bankruptcy trustee has the statutorily-created power to pursue claims on behalf of creditors, and the *Hays* trustee was asserting claims arising under the Bankruptcy Code.  Receivers have no such powers, as the Third Circuit subsequently held in *Marion*, 591 F.3d at 147 (stating that a federal receiver does not have standing to pursue claims on behalf of creditors).  The Second Circuit's decision in *Allegeart v. Perot*, 548 F.2d 432, 436 (2nd Cir. 1977) is similarly counter-balanced by its subsequent holding in *Eberhard*, 530 F.3d at 132 (federal receiver lacks standing to pursue fraudulent transfer claims on behalf of creditors).  *Marion* and *Eberhard* are recent cases involving federal receivers; *Hays* and *Allegeart* are not.

In the Madoff litigation, the trustee also attempted to overreach and assert claims that properly belong to creditors.  Even though Mr. Picard is a bankruptcy and SIPC trustee – with statutory powers that exceed Mr. Janvey's – the Southern District of New York has rebuffed his efforts to assert creditor claims.  *See Picard v. HSBC Bank PLC,* 454 B.R. 25 (S.D.N.Y. 2011) ("[E]ven though a bankruptcy

trustee can seek to recover monies on behalf of the debtor's estate that will ultimately be used to help satisfy creditors' claims, it is settled law that the federal Bankruptcy Code (Title 11, United States Code) does not itself confer standing on a bankruptcy trustee to assert claims against third parties on behalf of the estate's creditors themselves, because the trustee stands in the shoes of the debtor, not the creditors." (citing *Caplin*);  *Picard v. JPMorgan Chase & Co.*, -- B.R. --, 2011 WL 5170434, at *9 (S.D.N.Y. Nov. 1, 2011) ("[T]he Trustee lacks standing under the Bankruptcy Code, as incorporated into SIPA, to pursue claims that properly belong to creditors—here, BMIS's customers.  Instead, he is empowered to pursue only those claims that properly belonged to the debtor before it entered bankruptcy.").

The bottom line is that a federal receiver lacks standing to sue on behalf of third-party creditors. [8]  And the Receiver *knows* this.  In an earlier brief filed in the *SEC v. Stanford* case, the Receiver specifically acknowledged that "[i]t is a well known legal principle that a receiver can bring only those claims belonging to the entity it represents and cannot bring claims on behalf of third parties." S.R.(10761), Doc. #1,000 in Case No. 3:09-cv-298 (quoting *Reneker v. Offill*, No. 3:08–CV–1394–D, 2009 WL 804134 (N.D.Tex. Mar. 26, 2009)).

---

[8]     If the Receiver *did* have legal standing to bring claims on behalf of Stanford investors, his claims arguably would be barred by SLUSA (the Securities Litigation Uniform Standards Act), as the investors' attorneys have acknowledged in the pending *Roland* appeal.  *See* Motion to Expedite in Case No. 11-10932, at 2 n.4.

## B.     The Receiver Is Bound by SGC's Arbitration Agreements

A receiver "is bound to the arbitration agreements to the same extent that the receivership entities would have been absent the appointment of the receiver." *Javitch v. First Union Securities Inc.*, 315 F.3d 619, 627 (6th Cir. 2003); *see also Capitol Life Ins. Co. v. Gallagher*, No. 94-1040, 1995 WL 66602, at *2 (10th Cir. Feb. 7, 1995) ("[the receiver] may be compelled to arbitrate because a receiver 'stands in the shoes' of the [receivership entity]"); *cf. Hays*, 885 F.2d at 1153-54 (bankruptcy trustee "stands in the shoes of the debtor" for purposes of arbitration clause and must arbitrate all claims that are derived from the rights of the debtor"); *Wuliger v. Mfrs Life Ins. Co.*, 567 F.3d 787, 798-99 (6th Cir. 2009) (receiver is "subject to the same claims and defenses as the received entity he represents)."

The Receiver's obligation to arbitrate flows from a comprehensive system of mandatory arbitration that applies to every broker-dealer in the nation.  *See* R. 1257-1260 (Doc. # 201-2).  FINRA's rules expressly state that a dispute between a broker-dealer and its employees "must be arbitrated under the Code."  ***FINRA CODE OF ARBITRATION PROCEDURE FOR INDUSTRY DISPUTES Rule 13200(a). Indeed, it is a violation of FINRA Rules for SGC to fail to submit its disputes with the FAs to arbitration. *See* FINRA IM-13000.

Here, the Receiver of SGC is seeking to recover compensation that SGC (a FINRA member) paid to its employees (FINRA "associated persons") for work

they did for and while employed by SGC. Those compensation claims unquestionably fall within the scope of FINRA Rule 13200.

Despite Mr. Janvey's requests, this Court simply does not have the discretionary power to disregard binding arbitration agreements in the name of equity. To the contrary, the Federal Arbitration Act expressly precludes the exercise of such discretion:

> By its terms, the Act leaves no place for the exercise of discretion by a District Court, but instead mandates that District Courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.

*Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis original).

Arbitration is heavily favored as a matter of public policy. *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (citing "national policy favoring arbitration"). Federal courts are required to "rigorously enforce arbitration agreements." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. at 226. As this Court has explained, courts "must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

### C. The "Creditors" Also Signed Arbitration Agreements

Finally, even if the Receiver *could* assert claims on behalf of third-party creditors, he still would be required to arbitrate because those creditors *also* have entered into arbitration agreements with the FAs.

28

Stanford's investors signed arbitration agreements when they opened their accounts with SGC. *See, e.g.*, S.R.(10761), Doc. #1027 in Case No. 3:09-cv-00298-N (SGC client filed motion for leave to initiate arbitration against FAs pursuant to client arbitration agreement). SGC's Client Agreement contained the following arbitration provision:

> All controversies between the Client and Stanford (or any of Stanford's present or former officers, directors, agent or employees) that may arise from any cause whatsoever shall be determined by arbitration. Any arbitration under this Agreement shall be before FINRA and in accordance with the rules of such organization. This arbitration provision shall apply to any action or claim or issue in any controversy arising from events that occurred prior to, on, or subsequent to the execution of this Agreement. The award of the arbitrators, or of the majority of them, shall be final . . . .

S.R.(10761), Doc. #1027-2 in Case No. 3:09-cv-00298-N. These arbitration agreements are binding and enforceable, and the record reflects numerous instances of investors who are attempting to pursue FINRA arbitration claims. *See, e.g.*, S.R.(10617), Doc. #1030 in Case No. 3:09-cv-00298-N (discussing investor arbitration claims). Indeed, Stanford investors Jane Ann Sasser, *et al.* have demanded the right to pursue FINRA arbitration claims against their Stanford financial advisors. *See* Fifth Circuit Case No. 10-10336.

In its August 26, 2011 order, the district court erroneously held that the FA Defendants had waived this argument because it was not included in their original arbitration brief. The district court's holding was factually unsupported and

contrary to applicable law.  First, the district court failed to acknowledge that the issue did not arise until the Receiver filed a sur-reply brief, in which he argued for the first time that he was pursuing claims on behalf of third-party creditors rather than the entities in receivership,  R. 3323-3344 (Doc. 400-1).  The FA Defendants filed a responsive brief with permission from the district court, and they specifically discussed the investors' arbitration agreements in response to the Receiver's new claims.   S.R.9 526 (Doc. # 492).  Second, there is a strong legal presumption against a waiver of the right to arbitrate.  *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005).  As a matter of law, the FA Defendants cannot waive their arbitration rights unless they "substantially invoke the judicial process" in a manner that evinces a desire to resolve this dispute through litigation rather than arbitration.  *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999); *Gulf Guar. Life Ins. Co. v. Connecticut General Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002).  As virtually everyone involved in this protracted litigation will acknowledge, the FA Defendants have *never* expressed a desire to litigate this case in court rather than arbitration.

Ultimately, there is no reason for the Court to address the investor arbitration agreements because the Receiver stands in the shoes of the receivership entities.  But these arbitration agreements exist, and they eviscerate the rationale for the

Receiver's tortured standing arguments. No matter which way the Receiver turns, he is faced with binding arbitration agreements. He cannot avoid them.

## II. THE RECEIVER'S CLAIMS MUST BE ARBITRATED UNDER FINRA RULES AND THE PARTIES' BINDING ARBITRATION AGREEMENTS

The undisputed facts before the Court are: (1) the Receiver seeks to recover payments made to the FAs by SGC, a registered broker-dealer and FINRA member; (2) the payments were employment compensation; (3) SGC and the FAs entered into arbitration agreements relating to the compensation that the Receiver seeks to recover, which are contained in Promissory Notes, the FAs' Form U-4s, and FINRA rules; and (4) the arbitration agreements are valid, and the Receiver's claims are within the scope of the agreements. Accordingly, pursuant to FINRA Rule 13200 and the terms of the parties' agreements, the Receiver's claims must be arbitrated.

### A. FINRA Rules Require Arbitration

FINRA rules provide that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: members; members and associated persons; or associated persons." FINRA CODE OF ARBITRATION PROCEDURE FOR INDUSTRY DISPUTES Rule 13200(a). SGC is and was at all relevant times a member of FINRA (or its predecessor, the NASD) and is bound by the FINRA requirement to

arbitrate all disputes with associated persons. FINRA MANUAL Rule 0140(a) ("The Rules shall apply to all members and persons associated with a member. Persons associated with a member shall have the same duties and obligations as a member under the Rules."). Indeed, it is a violation of FINRA Rules for SGC to fail to submit its disputes with the FAs to arbitration or to require the FAs to waive arbitration of any disputes covered by Rule 1300. *See* FINRA IM-13000.

All of the FAs are "associated persons" as defined by FINRA because they are all natural persons registered under the Rules of FINRA and/or were engaged in the securities business under the control of SGC. FINRA Rule 13100(r). All associated persons are required to make an application for registration with a member firm, which is done through a Form U-4. FINRA Bylaws, Art. V, section 2; *see also* R. 1656-94 (Form U-4 Uniform Application For Securities Registration or Transfer). Form U-4 includes an arbitration provision stating: "I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or bylaws of the [Self Regulatory Organizations]." *Id.*

Member firms are held to the same arbitration requirements as associated persons under FINRA regulations. *Millas v. Morgan Stanley & Co., Inc.*, No. 09-cv-0573-MJR, 2008 WL 5095917, at *5 (S.D. Ill. Dec. 1, 2008) ("Morgan Stanley

is held to the same arbitration requirements as [a broker] under the FINRA regulations.").

The Receiver's claims unquestionably "arise out of the business activities" of both SGC and the FAs.  The phrase "arises out of" in Rule 13200 is broadly construed and means "originating from," "growing out of," or "flowing from" the business activities of either SGC or the FAs.  *Williams v. Imhoff*, 203 F.3d 758, 765 (10th Cir. 2000).  The Receiver's claims are based on the sales activities of the FAs at SGC and the compensation they received from SGC while they were employed at SGC.  R. 1005-06, 1013-14, 1017 (Doc. # 165) at ¶¶ 2, 4, 28, 29, 38.  The Receiver seeks return of compensation paid by SGC to the FAs in agreeing to join SGC as financial advisors (upfront payments), for selling SIB CDs (SIB commissions and bonuses), for running branch offices (branch managing director compensation), and in agreeing to end their employment (severance).  *Id.* at 1022-26 ¶¶ 50, 51, 53, 54.  Further, claims relating to the compensation of financial advisors are within the scope of Rule 13200 and Form U-4 arbitration requirements.  *Brennan v. Aetna Life Ins. Annuity Co.*, No. Civ.A.3:00-cv-205BC, 2001 WL 167954, at *2 (N.D. Tex. Jan. 19, 2001).

### B.     The FAs' Promissory Notes Also Require Arbitration

The majority of the compensation the Receiver seeks to recapture consists of upfront loan payments received by the FAs.  These upfront payments were made in

accordance with the terms of forgivable Promissory Notes between SGC and the FAs. R. 1351-1642 (Doc. # 202), *Id.* at 1647 ¶ 12. Every single Promissory Note contain virtually the same arbitration clause: "Borrower hereby agrees that any controversy arising out of or relating to this Note, or default of this Note, shall be submitted to and settled by arbitration pursuant to the constitutions, by-laws, rules and regulations of the Financial Industry Regulatory Authority (FINRA) [or its predecessor, the NASD] in the local area of the office the Borrower is employed [or in some cases, "of the principal office"]." *Id.* at 1353 ¶ 9. Therefore, the Promissory Notes also require arbitration of the Receiver's claims. Indeed, just weeks before the creation of the receivership, SGC successfully enforced the arbitration provisions contained in its employees' Promissory Notes. *See In re Stanford Group Co.*, 273 S.W.3d 807, 810 (Tex. App. – Houston [14[th] Dist.] 2008, orig. proceeding).

## III. THE DISTRICT COURT ERRED IN REFUSING TO ISSUE AN ORDER COMPELLING ARBITRATION

The Supreme Court has repeatedly emphasized that the Federal Arbitration Act ("FAA") embodies a strong public policy in favor of arbitration. *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (citing "national policy favoring arbitration"). The Supreme Court requires the question of arbitrability to be addressed with a "healthy regard for the federal policy favoring arbitration." *Moses Cone*, 460 U.S. at 24-25. "[A]ny doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration." *Id*. In other words, courts must "rigorously enforce arbitration agreements." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987), quoting *Dean Witter Reynolds v. Byrd*, 470 U.S. at 221.

In deciding to compel arbitration, the Court must determine "whether there is a valid agreement to arbitrate between the parties; and . . . whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc*., 89 F.3d 252, 258 (5th Cir. 1996). As demonstrated above, there are valid agreements to arbitrate under FINRA Rules, Form U-4, and the Promissory Notes. Once the court determines there is a valid agreement to arbitrate, it "must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). As the Supreme Court made clear in *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985), the FAA leaves no room for the exercise of discretion if a dispute is arbitrable:

> By its terms, the Act leaves no place for the exercise of discretion by a District Court, but instead mandates that District Courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.

*Id*. at 218 (emphasis original).

The Defendant FAs filed a motion to compel arbitration on January 15, 2010. *See* R. 1243-70 (Doc. # 202). Pursuant to terms of 9 U.S.C. § 4 and

applicable case law, the FA Defendants are entitled to an order compelling arbitration of all claims asserted in the Second Amended Complaint.

## IV.    CONCLUSION

The Receiver's standing to bring claims on behalf of third-party creditors is the crux of the case. If the Receiver stands in the shoes of the Stanford entities, as he must, then he also must arbitrate. The district court's August 26, 2011 order was erroneous and should be reversed.

Respectfully submitted,

s/ Bradley W. Foster
Bradley W. Foster
Texas State Bar No. 07283200
bradfoster@andrewskurth.com
Matthew G. Nielsen
Texas State Bar No. 24032792
matthewnielsen@andrewskurth.com

Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas  75201
Telephone:  (214) 659-4400
Facsimile:  (214) 659-4401

**ATTORNEYS FOR APPELLANTS**
**(115 FA DEFENDANTS)**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of December, 2011, the foregoing **BRIEF OF APPELLANTS' (115 FA DEFENDANTS)** was filed using the United Stated Court of Appeals for the Fifth Circuit's ECF/CM system and the below listed counsel were served via the court's electronic Notice of Docket Activity or electronic mail pursuant to 5th Cir. R. 25.2.5:


Kevin Sadler                        kevin.sadler@bakerbotts.com
Robert I. Howell                    robert.howell@bakerbotts.com
David T Arlington                   david.arlington@bakerbotts.com
Scott D. Powers                     scott.powers@bakerbotts.com
Baker Botts
1500 San Jacinto Center
98 San Jacinto Blvd.
Austin, TX  78701-4078

Timothy S. Durst                    tim.durst@bakerbotts.com
2001 Ross Ave.
Dallas, TX  75201

Ben L. Krage, Esq.                  bkrage@kjllp.com
Krage & Janvey, L.L.P.
2100 Ross Avenue, Suite 2600
Dallas, TX 75201-0000

Attorneys for Ralph S. Janvey, Plaintiff-Appellant

J. Pat Sadler                     pat@sadlerlawfirmllc.com
Sadler Law Office, LLC
1155 Hightower Trail
Suite 200
Atlanta, GA 30350


Robert L. Wright                  rwright@rlwpc.com
Robert L. Wright, P.C.
612 Eighth Avenue
Fort Worth, Texas 76104


Attorneys for Alan Brookshire, James C. Chandley, David Braxton Gay, Gregory C. Gibson, John Grear, Jason Likens, Kale Olson, Timothy D. Rogers, Nick Sherrod, Susan Glynn, John Whitfield Wilks, Defendants-Appellees


Jason W. Graham                   jason@grahamandpenman.com
Graham and Penman
2989 Piedmont Road, N.E.
Atlanta, GA 30305


Robert L. Wright                  rwright@rlwpc.com
Robert L. Wright, P.C.
612 Eighth Avenue
Fort Worth, Texas 76104


Attorneys for Steve Slewitzke, Brad Bradham, Nolan Farhy, Virgil Harris, Louis Schaufele, Eric Urena, Bianca Fernandez, Nancy J. Huggins, Defendants-Appellees


                              s/ Bradley W. Foster

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fifth Circuit Rule 32.2 and 32.3, the undersigned certifies that this brief complies with the type volume limitations of Fed. R. App. P. 32.2(a)(7).

1.      Exclusive of the exempted portions in Fed. R. App. P. 32(a)(7) and Fifth Circuit Rule 32.2, the brief contains 8,860 words.

2.      The brief has been prepared in proportionally spaced typeface using:

Software Name and Version:  MS WORD 2003,
Typeface Name:  Times New Roman,
Font Size:  14 point.

3.      Pursuant to Fifth Cir. R. 31.1, an electronic version of the brief has been filed with the clerk.

4.      The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7), may result in the court's striking the brief and imposing sanctions against the person signing the brief.

s/ Bradley W. Foster
Bradley W. Foster