## CASE NO. 11-10838

### IN THE
### UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

RALPH S. JANVEY,

PLAINTIFF-APPELLEE

v.

JAMES R. ALGUIRE; VICTORIA ANCTIL; TIFFANY ANGELLE; SYLVIA AQUINO; JONATHAN BARRACK; ALAN BROOKSHIRE; JAMES C. CHANDLEY; DAVID BRAXTON GAY; GREGORY C. GIBSON; JOHN GREAR; JASON LIKENS; KALE OLSON; TIMOTHY D. ROGERS; NICK SHERROD; SUSAN GLYLNN; JOHN WHITFIELD WILKS; STEVE SLEWITZKE; BRAD BRADHAM; NOLAN FARHY; VIRGIL HARRIS; LOUIS SCHAUFELE; ERIC URENA; BIANCA FERNANDEZ; NANCY J. HUGGINS, ET AL.,

DEFENDANTS-APPELLANTS,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS, NO. 3:09-CV-724-N

## BRIEF OF APPELLEE, RALPH S. JANVEY

Kevin M. Sadler
Scott D. Powers
BAKER BOTTS L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
(512) 322.2500 (Telephone)
(512) 322.2501 (Facsimile)

ATTORNEYS FOR APPELLEE
RALPH S. JANVEY

## CERTIFICATE OF INTERESTED PERSONS

The undersigned certifies that the parties listed below are the persons

and entities interested in this appeal:


| | |
|---|---|
| Plaintiff-Appellee: | Ralph S. Janvey, Receiver |
| Attorneys: | Kevin M. Sadler |
| | Scott D. Powers |
| | BAKER BOTTS L.L.P. |
| | 98 San Jacinto Blvd., Suite 1500 |
| | Austin, Texas  78701 |
| | |
| | Timothy S. Durst |
| | BAKER BOTTS L.L.P. |
| | 2001 Ross Avenue |
| | Dallas, Texas 75201 |
| | |
| | Richard B. Roper, III |
| | THOMPSON & KNIGHT LLP |
| | 1722 Routh Street |
| | Dallas, Texas  75201 |
| | |
| | Ben L. Krage, Esq. |
| | KRAGE & JANVEY, L.L.P. |
| | 2100 Ross Avenue, Suite 2600 |
| | Dallas, Texas  75201 |
| Attorneys for U.S. Securities & Exchange Commission: | David B. Reece |
| | Mike Post |
| | D. Thomas Keltner |
| | J. Kevin Edmundson |
| | Michael D. King |
| | Steve J. Korotash |
| | U.S. SECURITIES & EXCHANGE COMMISSION |
| | Burnett Plaza, Suite 1900 |
| | 801 Cherry Street, Unit #18 |
| | Fort Worth, Texas  76102-6682 |

| | |
|---|---|
| Court Appointed Examiner: | John J. Little<br>Stephen Granberry Gleboff<br>LITTLE PEDERSEN FANKHAUSER<br>901 Main Street, Suite 4110<br>Dallas, Texas 75202 |
| Pershing LLC | Rodney Acker<br>Barton Wayne Cox<br>Ellen B. Sessions<br>FULBRIGHT & JAWORSKI<br>200 Ross Avenue, Suite 2800<br>Dallas, Texas 75201 |
| Held or Currently holds SCG customer/former employee accounts | J.P. MORGAN CLEARING CORPORATION<br>One Metrotech Center North<br>Brooklyn, NY  11201-3859 |

Defendants-Appellants:     Julian "Brad" Bradham, Nolan Farhy, Blanca
                           Fernandez, Robert David Haggard, Virgil Harris,
                           Nancy Huggins, Lou Schaufele, Harvey Schwartz,
                           Steve Slewitzke, and Eric Urena

Attorneys:                 Jason W. Graham
                           T. Brandon Welch
                           GRAHAM AND PENMAN, LLP
                           2989 Piedmont Road, NE Suite 200
                           Atlanta, GA 30305

                           Robert L. Wright
                           ROBERT L. WRIGHT, P.C.
                           612 Eighth Avenue
                           Fort Worth, Texas 76104


Defendants-Appellants:     Jim Alguire, Orlando Amaya, Victoria Anctil, Tiffany
                           Angelle (Degeyter), Silvia Aquino, George Arnold,
                           Mike Arthur, Donal Bahrenburg, Brown Baine,
                           Stephen Barber, John Barrack, Andrea Berger
                           (Freedman), Norman Blake, Michael Bober, Nigel
                           Bowman, Alexandre Braune, Charles Lee Brickey,
                           Nancy Brownlee, George Cairnes, Frank Carpin, Scott
                           Chaisson, Neal Clement, Chris Collier, Jay Comeaux,
                           Michael Conrad, John Cravens, Patrick Cruickshank,
                           Greg Day, Bill Decker, Mick DeGolier, Arturo Diaz,
                           Matt Drews, Tom Espy, Jason Fair, Evan Farrell, Roger
                           Fuller, Attlee Gaal, Gregg Gelber, Michael Gifford,
                           Steven Glasgow, John Glennon, Ward Good, Stephen
                           Greenhaw, Billy Ray Gross, Patricia Herr, John Mark
                           Holliday, Charles Hughes, Wiley Carter Hutchins, Jr.,
                           David Innes, Allen Johnson, Bruce Lang, Jim LeBaron,
                           Bill Leighton, Robert (Bobby) Lenoir, Trevor Ling,
                           Chris Long, Robert Long, Humberto Loopez, Michael
                           Macdonald, Maria Manerba, Mike Mansur, Bert
                           "Deems" May, Doug McDaniel, Matt McDaniel,
                           Pamela McGowan, Lawrence Messina, Bill Metzinger,
                           Trent Miller, Peter Montalbano, David Morgan,
                           Jonathan Mote, Caroll Mullis, Jon Nee, Aaron Nelson,

Norbert Nieuw, Scott Notowich, Monica Novitsky, Bill Peerman, Saraminta Perez, Randy Pickett, Edward Prieto, Christopher Prindle, Andrew Pritsios, Judith Quinones, Sumeet Rai, Michael Ralby, Leonor Ramirez, Nelson Ramirez, Steen Restifo, Jeff Ricks, Alan Riffle, Steve Robinson, Eddie Rollins, Rocky Roys, John Santi, Bill Scott, Haygood Seawell, Leonard Seawell IV, Doug Shaw, Paul Stanley, Sandy Steinberg, David Heath Stephens, William O. Stone, Jr, Paula Sutton, Scot Thigpen, Christopher Thompas, Jose Torres, Al Trullenque, Audrey Truman, Robert Ulloa, Tim Vanderver, Pete Vargas, Ed Ventrice, Maria Villanueva, Charles Vollmer, Bill Whitaker, Donald Whitley, Hunter Widener and Tom Woolsey

Attorneys:                    Bradley W. Foster
                              Matthew G. Nielsen
                              ANDREWS KURTH LLP
                              1717 Main Street, Suite 3700
                              Dallas, Texas 75201


Defendants-Appellants:        Susan Anguiano, Robert Barrett, Teral Bennett, Lori Bensing, Susana Cisneros, Ron Clayton, Don Cooper, Raymond Deragon, Abraham Dubrovsky, James Fontenot, John Fry, Mark Groesbeck, Donna Guerrero, Rodney Hadfield, Gary Haindel, Dirk Harris, Steven Hoffman, Charles Jantzi, Marty Karvelis, Grady Layfield, Jason LeBlanc, Anthony Makransky, Claudia Martinez, Janie Martinez, Aymeric Martinoia, Carol McCann, Gerardo Meave-Flores, Miguel Garces, Donald Miller, Henry Mills, Rolando Mora, Shawn Morgan, Lupe Northam, Tim Parsons, J.D. Perry, Louis Perry, John Schwab, Brent Simmons, Miguel Valdez, David Whittemore, Michael Word, Ryan Wrobleski, Spencer Murchison

Attorneys:                    Michael J. Stanley
                              STANLEY, FRANK & ROSE LLP
                              7026 Old Katy Road, Suite 259
                              Houston, Texas 77024

Defendants-Appellants:    Jeffrey E. Adams, Timothy W. Baughman and Thomas G. Rudkin

Attorneys:    Gene R. Besen
SONNENSCHEIN NATH & ROSENTHAL, LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201


Defendants-Appellants:    Ross D. Bruce

Attorneys:    Patricia Hair
Dan Zimmerman
Bruce V. Schewe
PHELPS DUNBAR LLP
700 Louisiana St., Suite 2600
Houston, Texas 77002

Kendall Kelly Hayden
COZEN O'CONNOR
2300 BankOne Center
1717 Main Street
Dallas, Texas 75201


Defendants-Appellants:    Dulce Perezmora

Attorneys:    Brett Feinstein
STRATTON & FEINSTEIN, P.A.
407 Lincoln Road, Suite 2A
Miami Beach, Florida 33139


Defendants-Appellants:    Alan Brookshire, James C. Chandley, David Braxton Gay, Gregory C. Gibson, John Grear, Jason Likens, Kale Olson, Timothy D. Rogers, Nick Sherrod, Susan Glynn, John Whitfield Wilks

Attorneys:                J. Pat Sadler
                          SADLER LAW OFFICE LLC
                          1155 Hightower Trail, Suite 200
                          Atlanta, GA  30350

                          Robert L. Wright
                          ROBERT L. WRIGHT, P.C.
                          2 Eighth Avenue
                          Fort Worth, Texas 76104


Defendants-Appellants:    Zack Parrish

Attorneys:                John Timothy Byrd
                          SMYSER KAPLAN & VESELKA, L.L.P.
                          700 Louisiana, Suite 2300
                          Houston, Texas 77002


Defendants-Appellants:    David Wayne Krumrey and E. Randolph Robertson, Jr.

Attorneys:                W. Perry Zivley, Jr.
                          CHANDLER, MATHIS & ZIVLEY, P.C.
                          909 Fannin, Suite 3750
                          Houston, Texas 77010


Defendants-Appellants:    Daniel Hernandez, Roberto Pena, and Roberto A. Pena

Attorneys:                Alexander Angueira
                          ALEXANDER ANGUEIRA, PLLC
                          7301 SW 57 Court, Suite 515
                          South Miami, Florida  33157


Defendants-Appellants:    James Weller

Attorneys:                Kariss K. Cottom
                          James M. Reed
                          HALL ESTILL HARDWICK, GABLE, GOLDEN & NELSON
                          320 South Boston Avenue, Suite 200
                          Tulsa, OK  74103-3706

Defendants-Appellants:     Jordan M. Estra

Attorneys:     William M. Lamoreaux
900 Jackson Street, Suite 180
Dallas, Texas 75202


Defendants-Appellants:     Patricio Atkinson

Attorneys:     Kerry C. Peterson
Matthew D. Rinaldi
MILLER, EGAN, MOLTER & NELSON, LLP
4514 Cole Avenue, Suite 1250
Dallas, Texas 75205


Defendants-Appellants:     Robert J. Bruno

Attorneys:     Scott J. Davenport
DAVENPORT LAW FIRM PC
1500 McGowen, Suite 200
Houston, Texas 77004


Defendants-Appellants:     Gold Wing Partners

Attorneys:     Kimberly A. Lucas
Judith P. Rodden
KYLE MATHIS & LUCAS LLP
8226 Douglas Avenue, Suite 450
Dallas, Texas 75225


Defendants-Appellants:     Jason Green

Attorneys:     John P. Kincade
WINSTEAD PC
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270

Defendants-Appellants:      Gustavo A. Garcia Escalante, Robert A. Kramer, James
                            F. Anthony, Helena M. Herrero, Nicholas P. Salas, Juan
                            C. Riera, Giampiero Riccio, Kelley L. Hawkins, Lori
                            Fischer, Juliana Franco, Michael Controrno, Jane E.
                            Bates, Susan K. Jurica

Attorneys:                  Laura Gibson
                            Linda Broocks
                            Leila El-Hakam
                            OGDEN, GIBSON, BROOCKS & LONGORIA, LLP
                            1900 Pennzoil South Tower
                            711 Louisiana
                            Houston, Texas 77002


Defendants-Appellants:      Larry Goldsmith

Attorneys:                  H. Stephen Brown
                            THE BROWN LAW FIRM PLC
                            850 Ridge Lake Blvd, Suite 300
                            Memphis, TN  38120

                            John Morant Cone
                            HITCHCOCK EVERT LLP
                            750 N. St. Paul St., Suite 1110
                            Dallas, Texas 75201


Defendants-Appellants:      Tony Perez and Manuel Malvaez

Attorneys:                  Uttam Dhillon
                            FITZPATRICK HAGOOD SMITH & UHL LLP
                            2515 McKinney Avenue, Suite 1400
                            Dallas, Texas 75201


Defendants-Appellants:      Timothy Johnson

Attorneys:                   D. Elaine Conway
                             James T. McBride
                             JACKSON WALKER LLP
                             1401 McKinney, Suite 1900
                             Houston, Texas 77010


Defendants-Appellants:       Gary Lieberman

Attorneys:                   Kevin H. Good
                             Curtis C. Graves
                             CONNOR & WINTERS LLP
                             1700 Pacific, Suite 2250
                             Dallas, Texas  75201


Defendants-Appellants:       Gail G. Marquette and Numa L. Marquette

Attorneys:                   Lance C. McCardle
                             Benjamin D. Reichard
                             James R. Swanson
                             FISHMAN HAYGOOD PHELPS WALMSLEY
                                 WILLIS & SWANSON LLP
                             201 St. Charles Avenue, 46th Flr
                             New Orleans, LA  70170-4600


Defendants-Appellants:       Gail Nelson

Attorneys:                   Joseph J. Mastrogiovanni, Jr.
                             MASTROGIOVANNI SCHORSCH & MERSKY PC
                             2001 Bryan Street, Suite 1250
                             Dallas, Texas 75201


Defendants-Appellants:       Kathleen Reed, Megan Malanga, Timothy W.
                             Summers, Carter Driscoll and Jon C. Shipman

| | |
|---|---|
| Attorneys: | Tricia R. DeLeon |
| | Janelle S. Forteza |
| | BRACEWELL & GIULIANI LLP |
| | 1445 Ross Avenue, Suite 3800 |
| | Dallas, Texas 75202-2711 |

Defendants-Appellants:     Marie Nieves

| | |
|---|---|
| Attorneys: | Brett Feinstein |
| | STRATTON & FEINSTEIN PA |
| | 407 Lincoln Road, Suite 2A |
| | Miami Beach, Florida 33139 |

Defendants-Appellants:     Robert Hogue and Nolan M. Netzger

| | |
|---|---|
| Attorneys: | William S. Chesney, II |
| | William L. Van Fleet |
| | FRANK ELMORE LIEVENS CHESNEY & TURET LLP |
| | 808 Travis Street, Suite 2600 |
| | Houston, Texas 77002-5705 |

Defendants-Appellants:     David Nanes

| | |
|---|---|
| Attorneys: | Stacy Williams |
| | Charles R. Parker |
| | LOCKE LORD BISSELL & LIDDELL LLP |
| | 600 Travis Street, Suite 2800 |
| | Houston, Texas 77002-3095 |

Defendants-Appellants:     John D. Orcutt

| | |
|---|---|
| Attorneys: | Matthew R. Baker |
| | Carolyn R. Raines |
| | GODWIN RONQUILLO PC |
| | 1201 Elm Street |
| | 1700 Renaissance Tower |
| | Dallas, Texas 75270 |

Defendants-Appellants:       Syed Razvi

Attorneys:                   T. B. Nicholas, Jr.
                             DOWNS & STANFORD P.C.
                             2001 Bryan Street, Suite 4000
                             Dallas, Texas 75201


Defendants-Appellants:       Regions Bank as Trustee for LPFA II City Plaza
                             Project Series 2008 and II City Plaza LLC

Attorneys:                   James B. Greer
                             Joseph A. Hummel
                             Kenneth C. Johnston
                             KANE RUSSELL COLEMAN & LOGAN PC
                             1601 Elm St., Suite 3700
                             Dallas, Texas 75201


Defendants-Appellants:       SEI Private Trust Company

Attorneys:                   Jeffrey J. Chomko
                             Allyson N. Ho
                             Dennis C. Dice
                             MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
                             1845 Walnut St., 17th Floor
                             Philadelphia, PA 19103

                             Elizabeth Hoop Fay
                             Rachel Morgan
                             MORGAN LEWIS & BOCKIUS LLP
                             1701 Market Street
                             Philadelphia, PA 19103


Defendants-Appellants:       Mark Tidwell

Attorneys:              Mike O'Brien
                        MIKE O'BRIEN P.C.
                        14355 Highway 105
                        Washington, Texas 77880


Defendants-Appellants:  Bobby G. Wilkerson

Attorneys:              Brooks C. White
                        ALLEN LAW FIRM PC
                        212 Center St., 9th Flr
                        Little Rock, AR  72201


Defendants-Appellants:  Robert C. Williams

Attorneys:              H. Miles Cohn
                        SHEINESS SCOTT GROSSMAN & COHN LLP
                        1001 McKinney St., Suite 1400
                        Houston, Texas 77002-6420


Defendants-Appellants   Juan Araujo, Monica Ardesi, Mauricio Avilies,
                        Timothy Bambauer, Isaac Bar, Elias Barbar, Marie
                        Bautista, Oswaldo Bencomo, Marc H. Bettinger,
                        Stephen G. Blumenreich, Fabio Bramanti, Richard
                        Bucher, Fausto Callava, Rafael Carriles, Naveen
                        Chaudhary, Jany Cherovetzky, Bernard Cools-Lartigue,
                        Jose Corder, Oscar Correa, James Cox, Ken Cimmins,
                        Shawn M. Cross, James Cross, Andres Delgado, Ana
                        Dongilio, Torben Garde Due, Christopher Shannon
                        Elliote, Sean Duffey, Neil Emery, Marina Feldman,
                        Ignacio Felise, Freddy Fiorillo, Rosalia Fontanals,
                        Marc Gensch, Eric Gildhorn, Luis Giusti, Ramiro
                        Gomez-Rincon, Joaquin Gonzales, Juan Carlos
                        Gonzales, Vivian Guarch, John Gutfranski, Jon Hanna,
                        Charles Hazlett, Robert T. Helguera, Luis Hermosa,
                        Daniel Hernandez, Alfredo Herraez, Marcos Iturriza,
                        Faran Kassam, Joseph L. Klingen, Mayra C. Leon De
                        Carrero, Humberto Lepage, Francois Lessard, James C.
                        Li, Luis Felipe Lozano, David R. Lundquist, Iris

Marcovich, Carol McCann, Brent B. Milner, Hank Mills, Alberto Montero, Russ Newton, Walter Orejuela, Alfonso Ortega, Beatriz pena, Ernesto Pena, Brandon R. Phillips, Eduardo Picon, Arturo Prum, Maria Putz, David Rappaport, Walter Ricardo, Julio Ruelas, Peter R. Ross, Tatiana Saldivia, Christopher K. Schafer, Morris Serrero, Jordan F. Sibler, Rochelle Sidney, Brent Simmons, Peter Siragna, Nancy Soto, David M. Stubbs, Mark V. Stys, Ana Tanur, Juan Carlos Terrazas, Yliana Torrealba, Nicolas Valera, Jaime Vargas, Mario Vieira, Evely Villalon, Chris Villemarette, Frans Vingerhoedt, Daniel Vitrian, Iham Yassine, Bernard E. Young and Leon Zaidner

Attorneys:                          PRO SE

Investor Defendants in No. 3:09-CV-724-N          Gaines D. Adams, Wayland B. Alexander, Teresa memun de Alfie, Algica, S.A., Patricia A. Allison, Jose Luciano Mendez Alonso, Amara Trust, Clyde Anderson, Diane B. Annison, George B. Annison, Barbara Anthony, Anthony Joseph Antinori, Steven James Antinori, Steven James Antinori, Trustee, Aristide Treloar, Michael S. Asmer, Azalea Rest Cemetery Inc., Azalea Rest Cemetery Inc. Irrevocable Trust, BBRATSS Productions, Inc., Joseph Becker, Oscar Benedetti, Isabel Esther Benedetti de Izquerdo, Benito De Luca Trust, Jamie Cohen Benrey, Terry Beven, Kenneth Bird, Bluff Creed Redi-Mix, Inc., Bordeaux Investments I CV, Bordeaux Investments III CV, Bordeaux Investments IX CV, Bordeaux Investments X CV, James W. Boring, Jr., Ramon Alvarez Borondo, Betty Jo Brian, Hardee M. Brian, James E. Brown, Sr., Marsha C. Bruce, Murphy Buell, Stephen J. Burnham, John C. Buscheme, John B. Buscheme, Virginia Buscheme, Robert L. Bush, Elena Tron de Zepeda Carranza, Mauricio Zepeda Carranza, Gene Causey, Leopoldo Arosemena Cevasco, Dennis Childress, Joseph A. Chustz, Aubrey O'Neal Clement, Coffey Overseas Limited, Susan Perez de Cohen,

Compania Minera Caopas Sa De CV, John D. Cooper,
Corporation Nacional De Inversiones Sa De CV,
Country Hill Investment, N.A., Darrell D. Courville,
Carolyn Cranston, Jodie F. Crawford, Robert B.
Crawford, Jr., Crayford Holdings Limited, Earl L.
Crosby, Eugene L. Croxton Jr., Daniel Joseph Daigle,
Jilda Ann Daigle, Tarral E. Daigle, Daneco B.V., Daris
Revocable Trust, William Dawson, John G. Denison,
Kathy R. Denison, Richard A. Devall, Sue M. Devall,
Difficulty Holdings Limited, Deborah Dougherty,
Kenneth W. Dougherty, Michael J. Drago, David
Jonathan Drew, Dorothy T. Duncan, Dianne Dunn,
DVX Capital, William E. Ensminger, Ayse Oya Erhan,
Juergen Kurt Wagentrotz Ernst, Jose Maria Valle
Escamez, Estate of James D. Simmons, Gwendolyn E.
Fabre, Fayhill International, Joan A. Feucht, Richard S.
Feucht, Flen Rock Company LLC, Fleniken Sand &
Gravel, Inc., Lyman L. Fleniken Jr., Kendall Forbes,
Deborah Forbes, Betty Jo Forshag, Clarence H.
Forshag, Carlos Landeros Gallegos, Maria de Jesus
Landeros Gallegos, Gary D. Magness Irrevocable
Trust, Genova Trust, Mary E. Gerry, Lynn
Gildersleeve, Willa Mae Gildersleeve, Robert V.
Gildersleeve, Gordon C. Gill, GMAG LLC, Angelo
Victor Goncalves, Arturo Ortega Gonzalez, German
Luis Ortega Gonzales, Maria Carolina Ortega
Gonzalez, Robert Graham, Jason Graham, George R.
Graves III, Alice D. Greer, James B. Greer, Robert S.
Greer, Jonnie A. Griffith, Divo Milan Haddad, Sandra
F. Harrell, Bette Joseph Heaslip, HMS&B, Ltd.,
Herrera Holdings Ltd., Michael R. Holcomb, John R.
Holguin, Robert A. Houston, Infinitum Trust, Inmofybe
S.A., Intermedia Ltd., International Petrochemical Sales
Limited, Inversiones Patrick Robert P., Inversiones
Varmol Trust, Inversiones Varmol Trust Care of Dr.
Jose Mario Vargas P., IRM Investments, Inc., Shenoor
Jadavji, James E. Richardson Family Trust, Charles A.
James, Benton B. Johnson, Jennifer Savoic Johnson,
Martha Johnson, Timothy A. Johnson, William Bruce
Johnson, Jonathan Larkin Stock Trust, Edward Hylton

Jones, Shirley Gloria Jones, Tahsin Yilmaz Kalkavan,
Kirkwell CV, Dennis L. Kirby, Kerry R. Kling,
Krimich Ltd., Roberto Gallardo Kuri, Teresa Michelle
Lamke, Brett Landes, Don Landers, Phillip E. Lankford
Jr., Dennis Lantrip, Jonathan Larkin, Felix Mario
Hernandez Larrocoecha, James Ronald Lawson, Laura
Jeanette N. Lee, Emma Lee Lefebvre, Audrey A.
Letard, John O. Letard, Troy L. Lillie, Jr., Brian U.
Loncar, Sue A. Loncar, Lupe Martinez Trust, Lusky
Investment Partnership, LP, Lyda D. Tymiak Family
Trust, Gary Magness, Magness Securities LLC, Malton
Overseas Ltd., Antony Mansour, Rehan Mansour, Ron
Marsten, Susan Marsten, Marie Rochelle Sidney
Martinez, Maria de Lourdes Martinez de Sidney,
Charlie L. Massey, Robert Gray Matlock, Denise T.
McKenzie, Kevin A. McKenzie, Billie Ruth McMorris,
Ronald B. McMorris, Virginia McMorris, Dot G.
Melder, Jack W. Melder, Raul Rodriguez Mendez,
Henry A. Mentz III, Francoise Solange Mery,
Josephine Mery, Herman J. Milligan Jr., Mississippi
Polymers, Inc., Samuel R. Moore, Martha W. Moore,
Peggy Payne Moragne, Thomas J. Moran, J. Russell
Mothershed, Muddy Water Holdings, Ltd., Murfield
Investments, Inc., Naire B.V., Naire-Netherlands
Antillean Ins. and Reinsurance Company, Eduardo
Najera, Jennifer Najera, Alnoor Nathoo, Claude M.
Needham, Francis Nezianya, Angel Delio Nieuw,
Maria P.C. Nieuw-Cael, Nonna E. Trust, Norfe S.A.,
Maria Del Rocio Corona Odriozola, Arthur Ordoyne,
Bennie O'Rear, Claude O'Rear, Edgar Theron
Overland, Geneva Sue Palmer, Robert E. Palmer,
Anthony G. Parker, Ronald W. Parker, Gerald S.
Pasternak, Mary Ann Paternostro, Louise D. Patterson,
Hannah Kay Peck, Larry W. Perkins, Monty M.
Perkins, Patrick Loris Roger Petiot, Patrick Petiot,
Pingyi He, Pingyi He Orrulian, Wu De He, Pinot
Holdings Limited, Jane M. Pridgen, William C.
Provine, Provence Management Stichting I, Provence
Management Stichting III, Provence Management
Stichting IX, Provence Management Stichting X,

Pupbubi Trust, Jeff P. Purpera Jr., Jimmy Quebedeaux, Juanita Quinealty, Radium Company Ltd., Antonio Sanchez Ramos, Alberto Javier Botello Reed, Rose S. Ricketts, Timothy Russell Ricketts, Dolores May Payer Rollar, George Joseph Rollar, Franz Konrad Rosenhaus, Salomon Dondich Rosenhaus, Mario Braun Russek, Charles R. Sanchez, Mamie C. Sanchez, Charles R. Sanchez Sr., Saxonia Foundation, Judith P. Simmons, James D. Simmons, Thomas W. Slaughter, Sleeping Dog Holdings, Ltd., Archie Smith, Larry N. Smith, Charles E. Smith, Sociedad General de Inversiones, Robert Soule, Michael A. Speeg, James Stegall, Carol Stegall, Stichting Particulier Fonds El Tributo, Bruce Stone, Walter Stone, TA Trust, Silvia Guadalupe Tamez de Botello, John E. Taylor, Tebel Corporation, The Anthony Joseph Antinori Trust, The Second Amended and Restated Robert A. Houston Revocable Trust, The Steven James Antinori Trust, Bruce Thompson, Michelle Thompson, Michael J. Timmons, David Topp, Dora Topp, Arthur Torno, Jorge Emilio Garza Trevino, Eric Tucker, Terry N. Tullis, Thomas H. Turner, Lyda D. Tymiak, Maria Teresa San Sabastian De Valle, Ron Valentine, Judy A. Varnado, Anthony Ventrella, Galo Enrique Villamar Villafuerte, Claudio Enrique Hernandez Villalobos, Ines de Villamar, Jose Alberto Romero Viloria, Donna M. Vines, Juergen Kurt Wagentrotz, Waldman, Ltd., Olivia S. Warnock, Emolyn L. Watts, Edith Irma Watts, Arthur R. Waxley Jr., Carl M. Webb III, Luther D. Wells and Ronald E. Wells.

By: /s/ Kevin M. Sadler
     Kevin M. Sadler

## STATEMENT REGARDING ORAL ARGUMENT

The issue presented in this appeal has now been briefed three times. The issues in this appeal were first briefed in July 2010, and oral argument was presented to the Court on August 31, 2010. Then, following the Court's initial opinion issued on December 15, 2010, the issues were re-briefed via the Employee Defendants' petition for re-hearing *en banc*. There has been no change in the law and no change in the factual record since the prior rounds of briefing and oral argument. A second oral argument on the issues in this appeal is unnecessary and would not provide any new insight concerning the law or facts. *See* Fed. R. App. P. 34(a)(2)(C). If the Court determines, however, that oral argument is necessary or appropriate, the Receiver requests the opportunity to present oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................. I

STATEMENT REGARDING ORAL ARGUMENT .......................................... XVII

TABLE OF CONTENTS ............................................................ XVIII

TABLE OF AUTHORITIES .............................................................. XX

I JURISDICTIONAL STATEMENT .................................................... 1

II STATEMENT OF THE ISSUES .................................................... 1

III STATEMENT OF THE CASE .................................................... 3

IV STATEMENT OF FACTS ........................................................ 7

    A.    The Stanford Ponzi scheme. ............................................ 9

    B.    The Receiver's claims against former employees .............. 10

V STANDARD OF REVIEW ........................................................ 13

VI SUMMARY OF THE ARGUMENT ................................................ 13

VII ARGUMENT .................................................................... 17

    A.    The Receiver's fraudulent transfer claims are not subject to SGC's arbitration obligations. ........................................ 17

        1.    The Receiver has standing to bring fraudulent transfer claims on behalf of the Stanford creditors. .............. 18

        2.    The cases cited by the Employee Defendants do not support their position that the Receiver lacks standing to bring fraudulent transfer claims on behalf of the Stanford creditors. ................................................ 27

        3.    The cases cited by the Employee Defendants do not support their argument that the Receiver's fraudulent transfer claims are subject to SGC's arbitration obligations. ............................................... 37

B.   The Receiver's fraudulent transfer claims are not subject to the Stanford investors' arbitration obligations. ..........................................41

C.   Equitable and public policy considerations weigh against requiring the Receiver to submit his claims to arbitration. ................44

D.   The Receiver is not estopped from refusing to proceed with arbitration. ...........................................................................................48

E.   The Receiver's unjust enrichment claim is not subject to arbitration. ...........................................................................................50

VII CONCLUSION ...................................................................................................51

CERTIFICATE OF SERVICE ...........................................................................................53

CERTIFICATE OF COMPLIANCE ................................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allegaert v. Perot*,
    548 F.2d 432 (2d Cir. 1977) ..........................................................................41

*Am. Nat'l Bank of Austin v. MortgageAmerica Corp.*
    (*In re MortgageAmerica Corp.*), 714 F.2d 1266 (5th Cir. 1983) ......19, 22, 47

*Boston Trading Grp., Inc. v. Burnazos*,
    835 F.2d 1504 (1st Cir. 1987)..................................................................30, 47

*Capitol Life Ins. Co. v. Gallagher*,
    No. 94-1040, 1995 WL 66602 (10th Cir. Feb. 7, 1995)................................38

*Caplin v. Marine Midland Grace Trust Co. of N.Y.*,
    406 U.S. 416 (1972)........................................................................28, 34, 35

*Cotten v. Republic Nat'l Bank of Dallas*,
    395 S.W.2d 930 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.)....20, 25, 28

*Cycle Sport, L.L.C. v. Dinli Metal Indus. Co., Ltd.*,
    No. 3:07-CV-00253-O, 2008 WL 4791544 (N.D. Tex. Oct. 30, 2008)........18

*Donell v. Kowell*,
    533 F.3d 762 (9th Cir. 2008) ..................................................................23, 29

*Drennen v. S. States Fire Ins. Co.*,
    252 F. 776 (5th Cir. 1918) ..........................................................................19

*Eberhard v. Marcu*,
    530 F.3d 122 (2d Cir. 2008) ..................................................................23, 29

*Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*,
    No. 04-CV-4971(NG)(MDG), 2011 WL 2414685 (E.D.N.Y. June 8,
    2011) ............................................................................................................23

*Fla. Dept. of Ins. v. Chase Bank of Tex. Nat'l Assoc.*,
    No. CIV. A. 3:99CV1254G, 2000 WL 36065 (N.D. Tex. Jan. 14,
    2000) ............................................................................................................20

*Fleming v. Lind-Waldock & Co.*,
    922 F.2d 20 (1st Cir. 1990)..........................................................................28

*Guardian Consumer Fin. Corp. v. Langdeau*,
    329 S.W.2d 926 (Tex. Civ. App.—Austin 1959, no writ) ...........................21

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3rd Cir. 1989)...............................................................39, 46

*Hodgson v. Kottke Assocs., LLC*,
    Civil Action No. 06-5040, 2007 WL 2234525 (E.D. Pa. Aug. 1, 2007).......24

*Hollander v. Heaslip*,
    222 F. 808 (5th Cir. 1915) ..........................................................................26

*Hunter v. Pricekubecka, LLC*,
    339 S.W.3d 795 (Tex. App.—Dallas 2011, pet. denied) ............................50

*In re Gandy*,
    299 F.3d 489 (5th Cir. 2002) ........................................................26, 37, 40

*In re Huff*,
    109 B.R. 506 (Bankr. S.D. Fla. 1989) ....................................................33, 36

*In re National Gypsum*,
    118 F.3d 1056 (5th Cir. 1997) .....................................................................40

*In re Weekley Homes, L.P.*,
    180 S.W.3d 127 (Tex. 2005) ..................................................................49, 50

*In re Wiand*,
    2007 WL 963165 (M.D. Fla. Mar. 27, 2007) ..............................................24

*Janvey v. Adams*,
    588 F.3d 831 (5th Cir. 2009) .........................................................................8

*Janvey v. Alguire*
    628 F.3d 164 (5th Cir. 2010) .....................................................................5, 6

*Janvey v. Alguire*
    647 F.3d 585 (5th Cir. 2010) .................................................6, 7, 8, 18, 50

*Javitch v. First Union Secs., Inc.*,
    315 F.3d 619 (6th Cir. 2003) ...........................................................28, 38, 39

*KPMG LLP v. Cocchi*,
    132 S. Ct. 23 (2011)........................................................................51

*Marion v. Benistar*, Ltd., No. Civ.A. 03-4700, 2005 WL 563698 (E.D. Pa.
    Mar. 10, 2005) ............................................................................24

*Marion v. TDI Inc.*,
    591 F.3d 137 (3d Cir. 2010) .........................................................28

*McCandless v. Furlaud*,
    296 U.S. 140 (1935)...................................... 25, 29, 31, 32, 33, 35

*McGinness v. United States*,
    90 F.3d 143 (6th Cir. 1996) ....................................................19, 21

*Meyers v. Moody*,
    693 F.2d 1196 (5th Cir. 1982) ..................................................19, 34

*Moran v. U.S. Bank, N.A.*,
    No. 3:06CV050, 2007 WL 1023447 (S.D. Ohio Jan. 4, 2007) ....................38

*Obermaier v. Arnett*,
    No. 2:02CV111FTM29DNF, 2002 WL 31654535 (M.D. Fla. Nov. 20,
    2002) ......................................................................................24

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...................................................................19

*Phillips v. Lincoln Nat'l Health & Cas. Ins. Co.*,
    774 F. Supp. 1297 (D. Colo. 1991) ........................................38, 39

*Picard v. HSBC Bank PLC*
    454 B.R. 25 (S.D.N.Y. 2011) .......................................................29

*Picard v. JP Morgan Chase & Co.*
    460 B.R. 84 (S.D.N.Y. 2011) .................................................22, 23, 28, 47

*Quilling v. Cristell*,
    No. Civ.A. 304CV252, 2006 WL 316981 (W.D.N.C. Feb. 9, 2006)............24

*Quilling v. Grand St. Trust*,
      No. 3:04 CV 251, 2005 WL 1983879 (W.D.N.C. Aug. 12, 2005) ...............24

*Ross v. Health & Ret. Props. Trust*,
      703 N.E.2d 734 (Mass. App. Ct. 1998) .........................................................26

*Scholes v. African Enter., Inc.*,
      838 F. Supp. 349 (N.D. Ill. 1993)..................................................................25

*Scholes v. Lehmann*,
      56 F.3d 750 (7th Cir. 1995) ...................................................23, 29, 35, 36, 37

*SEC v. Am. Bd. of Trade, Inc.*,
      830 F.2d 431 (2d Cir. 1987) ..........................................................................45

*SEC v. Cook*,
      No. CA 3:00-CV-272-R, 2001 WL 256172 (N.D. Tex. Mar. 8, 2001).............
      ........................................................................................................20, 36

*SEC v. Elfindepan, S.A.*,
      No. 1:00CV00742, 2002 WL 31165146 (M.D.N.C. Aug. 30, 2002)............45

*SEC v. First Pac. Bancorp*,
      142 F.3d 1186 (9th Cir. 1998) .......................................................................45

*SEC v. Great White Marine & Recreation, Inc.*,
      428 F.3d 553 (5th Cir. 2005) .........................................................................44

*SEC v. Shiv*,
      379 F. Supp. 2d 609 (S.D.N.Y. 2005) ...........................................................30

*SEC. v. Stanford Int'l Bank, Ltd.*,
      424 Fed. Appx. 338 (5th Cir. 2011) ..............................................................23

*SEC v. Stanford Int'l Bank, Ltd.*,
      429 Fed. Appx. 379 (5th Cir. 2011) ..............................................................23

*Sherer v. Green Tree Servicing LLC*,
      548 F.3d 379 (5th Cir. 2008) .........................................................................13

*Terry v. June*,
      432 F. Supp. 2d 635 (W.D. Va. 2006)............................................................24

*United States Small Bus. Admin. v. Coqui Capital Mgmt.*,
  No. 08 Civ. 0978(LTS)(THK), 2008 WL 4735234 (S.D.N.Y Oct. 27, 2008) .............................................................................................38

*Warfield v. Alaniz*,
  453 F. Supp. 2d 1118 (D. Ariz. 2006) ..........................................................24

*Warfield v. Arpe*,
  Civil Action No. 3:05-cv-1457-R, 2007 WL 549467 (N.D. Tex. Feb. 22, 2007) ..........................................................................................24

*Webb v. Investacorp, Inc.*,
  89 F.3d 252 (5th Cir. 1996) ...................................................................17, 42

*Wheeler v. Am. Nat'l Bank of Beaumont*,
  338 S.W.2d 486 (Tex. Civ. App.—Beaumont 1960, writ granted), *aff'd in part and reversed in part*, 347 S.W.2d 918 (Tex. 1961) .................36

*Wing ex rel. 4NExchange, L.L.C. v. Yager*,
  No. 103CV54DAK, 2003 WL 23354487 (D. Utah Nov. 7, 2003) ..............24

*Wing v. Hammons*,
  No. 2:08-CV-00620, 2009 WL 1362389 (D. Utah May 14, 2009)..............21

*Wing v. Kendrick*,
  No. 2:08-CV-01002-DB, 2009 WL 1362383 (D. Utah May 14, 2009)........24

*Wing v. Wharton*,
  No. 2:08-CV-00887-DB, 2009 WL 1392679 (D. Utah May 15, 2009)........23

*Wuliger v. Mfrs. Life Ins. Co. (USA)*,
  567 F.3d 787 (6th Cir. 2009) .......................................................................28

## STATUTES

9 U.S.C. § 2 ....................................................................................................44

9 U.S.C. § 16(a)(1)............................................................................................1

78 U.S.C. § 78bb(f)(1) ...................................................................................27

Tex. Bus. & Com. Code § 24.005.................................................................39

Tex. Bus. & Com. Code § 24.008 (West 2009)....................................18

**OTHER AUTHORITIES**

65 Am. Jur. 2d *Receivers* § 88 (2001) ....................................................21

65 Am. Jur. 2d *Receivers* § 139 (2001) ..................................................34

65 Am. Jur. 2d *Receivers* § 371(2001) ..................................................21

Fed. R. App. P. 32(a)(5)...........................................................................54

Fed. R. App. P. 32(a)(6)...........................................................................54

Fed. R. App. P. 32(a)(7)...........................................................................54

Fed. R. App. P. 32(a)(7)(B) .....................................................................54

Fed. R. App. P. 32(a)(7)(B)(iii) ...............................................................54

FINRA Code of Arbitration Procedure for Industry Disputes Rule 13602.............48

FINRA Code of Arbitration Procedure for Industry Disputes Rule 13904(g) ........48

# I

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1), which permits appeals of orders denying motions to compel arbitration.

# II

## STATEMENT OF THE ISSUES

Receiver Ralph S. Janvey has asserted fraudulent transfer claims and unjust enrichment claims against more than 300 former Stanford employees (the "Employee Defendants").  The Receiver seeks to recover fraudulent transfers that the Employee Defendants received from the Stanford Ponzi scheme in the form of both compensation related to the sales of fraudulent certificates of deposits issued by Stanford International Bank, Ltd. ("SIB CDs") and proceeds related to the Employee Defendants' own SIB CD investments.

The Receiver has asserted his fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA") on behalf of the creditors of the Stanford estate.  The Employee Defendants contend, however, that the Receiver can only "stand in the shoes" of Stanford Group Company ("SGC") and that his fraudulent transfer claims are subject to mandatory arbitration pursuant to SGC's arbitration obligations.

The present issue was brought before this Court in connection with a prior interlocutory appeal in this matter. In that instance, a panel of this Court issued an opinion holding that the Receiver's claims are not subject to mandatory arbitration because the Receiver is suing on behalf of the Stanford creditors, who are not bound by SGC's arbitration obligations. Thereafter, the Court withdrew its prior opinion and substituted an opinion (1) holding that the Court did not have jurisdiction to rule on the Employee Defendants' motions to compel arbitration because the trial court had not yet ruled on the motions, and (2) remanding the issue to the district court for a ruling in the first instance.

On remand, the district court denied the Employee Defendants' motions to compel arbitration, adopting the language and reasoning of the relevant portion of this Court's withdrawn opinion as its own. The district court held that the Receiver's fraudulent transfer claims are not subject to SGC's arbitration obligations because the Receiver's claims are properly asserted on behalf of the Stanford creditors.

In this appeal, the Employee Defendants argue, among other things, that the Receiver does not have standing to assert fraudulent transfer claims on behalf of the Stanford creditors, that the Receiver can only bring claims that the Stanford entities could have brought, and that the Stanford creditors agreed to arbitrate any claims against the Employee Defendants.

The specific issues before the Court are as follows:

Issue 1: Does the Receiver—consistent with nearly a century of uniform federal authority—have standing to assert, on behalf of the Stanford creditors, fraudulent transfer claims that are not *personal* to any particular Stanford creditor and that belong to the *general* class of Stanford creditors?

Issue 2: Are the Receiver's claims subject to arbitration simply because some creditors of the Stanford Ponzi scheme, but admittedly not all creditors, may have signed arbitration agreement?

Issue 3: Is the Receiver bound by SGC's agreement to arbitrate, even though he has not accepted, through his claims or otherwise, any of the alleged benefits of the agreements containing arbitration clauses?

Issue 4: Is the Receiver's claim for unjust enrichment subject to arbitration, even though the Receiver is not asserting the claim on behalf of SGC but is instead asserting the claim on behalf of Stanford's creditors generally?

### III

### STATEMENT OF THE CASE

This interlocutory appeal arises from the district court's Order of August 26, 2011 (the "Order"), whereby the district court denied the Employee Defendants' motions to compel arbitration after concluding (1) that the Receiver has standing to bring claims on behalf of the Stanford creditors, (2) that the

Receiver is not subject to SGC's arbitration obligations, and (3) that the Receiver is not required to submit his claims to arbitration pursuant to any purported arbitration agreement between the Stanford creditors and the Employee Defendants.

On February 17, 2009, the Securities and Exchange Commission ("SEC") filed a lawsuit against Allen Stanford, James M. Davis, Laura Pendergest-Holt, and various other corporate entities owned, either directly or indirectly, by Allen Stanford, including Stanford International Bank, Ltd. ("SIB") and SGC (collectively, "Stanford" or the "Stanford Defendants"), in the United States District Court for the Northern District of Texas, Case No. 3:09-CV-0298-N (the "SEC lawsuit"). (*See* S.ROA(298) at 3–28.)[1] The next day, the district court placed the Stanford entities in receivership and appointed Ralph S. Janvey as Receiver for the more than 100 Stanford entities. (*See* S.ROA(298) at 86.) Since his appointment, the Receiver has asserted fraudulent transfer claims and unjust enrichment claims against more than 300 former Stanford employees (the "Employee Defendants"). ( *See* R. at 1005–30, 2611–27.)

---

[1] References to the Record on Appeal originally filed in Case No. 10-10617 will be denoted by "R." followed by the page number(s). References to the seventh supplement to the record created by the District Court will be denoted as "S.R.7," followed by the page number(s). References to documents incorporated into the record by motions to supplement in Case No. 10-10617 on July 6, 2010, and July 30, 2010 will be denoted as "S.R.(10761)." References to the prior record on appeal in Case No. 09-10761 will be denoted by "ROA" followed by the page number(s). References to the September 10, 2009 supplemental record containing documents from the SEC Lawsuit will be denoted by "S.ROA(298)" followed by the page number(s).

At the same time that the district court appointed the Receiver, it froze assets in accounts held "in the name, on behalf or for the benefit of" the Stanford entities. (*See* S.ROA(298) at 78.) Such accounts included certain accounts in the names of the Employee Defendants. Before that freeze expired, the Receiver moved for a preliminary injunction under TUFTA to continue the freeze. (*See* R. at 2958–92.) Various groups comprising the Employee Defendants opposed the Receiver's motion for a preliminary injunction and moved to compel arbitration of the Receiver's claims. The district court granted the preliminary injunction, but did not decide the merits of the Employee Defendants' motions to compel arbitration. (R. 4268, 4273–74.)

On appeal of the district court's order granting the preliminary injunction under TUFTA, the Employee Defendants and the Receiver asked this Court to determine the merits of the Employee Defendants' motions to compel because the issue had been fully briefed and both sides agreed that it was in their best interests to have the issue resolved.

On December 15, 2010, a panel of the Court issued an opinion holding that the Receiver's claims against the Employee Defendants are not subject to mandatory arbitration because they are asserted by the Receiver on behalf of the Stanford creditors. *See Janvey v. Alguire* ("*Alguire I*"), 628 F.3d 164, 185 (5th Cir. 2010) ("We believe that in this case, the Receiver is acting on behalf of

creditors, who are not party to the arbitration agreements and therefore he is not bound by the arbitration agreement.")   On January 4, 2011, a group of the Employee Defendants filed a petition for rehearing *en banc*.

On July 22, 2011, before issuing any ruling on the Employee Defendants' petition for rehearing, the Court withdrew its prior opinion and substituted an opinion (1) holding that the Court did not have jurisdiction to rule on the Employee Defendants' motions to compel arbitration because the district court had not yet ruled on the motions, and (2) remanding the issue to the district court for a ruling in the first instance.  *See Janvey v. Alguire* ("*Alguire II*"), 647 F.3d 585, 603–04 (5th Cir. 2010) ("As there was no final or interlocutory order, and we could find no jurisprudential exception, we do not have jurisdiction to decide the motion to compel.").

In withdrawing its prior opinion, the Court did not express any reservations regarding the holding or reasoning of its prior opinion.[2] (*See* Order, S.R.7 at 3520 ("The Court vacated [the arbitrability] portion of its earlier opinion, not due to any reservation regarding its reasoning, but rather

---

[2] Although the Court made almost no changes to the rest of the opinion (other than replacing the discussion of the merits of the Employee Defendants' motions to compel arbitration with a discussion of the Court's jurisdiction), the Court actually reiterated its view that with respect to its claims against the Employee Defendants, the Receiver is representing the Stanford creditors. *Compare Janvey v. Alguire* ("*Alguire I*"), 628 F.3d 164, 180 (5th Cir. 2010) ("[T]he district court weighed the interests of the Employee Defendants against the interests represented by the Receiver (the creditors)."), *with Janvey v. Alguire* ("*Alguire II*"), 647 F.3d 585, 601 (5th Cir. 2010) ("[T]he district court weighed the interests of the Employee Defendants against the interests represented by the Receiver (*i.e.*, *the interests of the creditors*)." (emphasis added)).

6

finding that it did not have jurisdiction to determine arbitrability in the first instance.").)  The Court simply concluded that it did not have jurisdiction to decide the issue because the district court had not yet ruled on the Employee Defendants' motions.  *See Alguire*, 647 F.3d at 603.

On remand, the district court denied the Employee Defendants' motions to compel arbitration.  (*See* Order, S.R.7 at 3524–25.)  "[P]ersuaded by the legal reasoning" of this Court's withdrawn opinion, (*see* Order, S.R.7 at 2530), the district court held that the Receiver's fraudulent transfer claims are not subject to SGC's arbitration obligations because the Receiver's claims are properly asserted on behalf of the Stanford creditors, (*see* Order, S.R.7 at 3524–25).  With deference and attribution to this Court, the district court adopted "the language and reasoning" of the relevant portion of the Court's prior opinion and incorporated it into the body of the Order.

## IV

## STATEMENT OF FACTS

The Court set forth the background facts of this case in an earlier appeal involving the same parties and related issues:

> This case arises out of an alleged multi-billion-dollar Ponzi scheme perpetrated by [the Stanford entities] . . . . According to the SEC, the companies' core objective was to sell certificates of deposit ("CDs") issued by [SIB]. Stanford achieved and maintained a high volume of CD sales by promising above-market returns and falsely

> assuring investors that the CDs were backed by safe,
> liquid investments.  For almost 15 years, [SIB]
> represented that it consistently earned high returns on its
> investment of CD sales proceeds, ranging from 12.7% in
> 2007 to 13.93% in 1994.  In fact, however, [SIB] had to
> use new CD sales proceeds to make interest and
> redemption payments on pre-existing CDs, because it did
> not have sufficient assets, reserves and investments to
> cover its liabilities.

*Alguire II*, 647 F.3d 585, 590 (5th Cir. 2011) (quoting *Janvey v. Adams,* 588 F.3d

831, 833 (5th Cir. 2009)).

On February 17, 2009, the SEC filed a lawsuit against Allen Stanford,

James M. Davis, Laura Pendergest-Holt, and various other corporate entities

owned, either directly or indirectly, by Allen Stanford, including SIB and SGC, in

the United District Court for the Northern District of Texas, No. 3:09-CV-0298-N.

(*See* S.ROA(298) at 3–28.)  The next day, the district court appointed Ralph S.

Janvey as Receiver for the more than 100 Stanford entities and granted him broad

powers to "[i]nstitute such actions or proceedings to impose a constructive trust,

obtain possession, and/or recover judgment with respect to persons or entities who

received assets or records traceable to the Receivership Estate."  (S.ROA(298)

at 88.)  The district court specifically directed that "[a]ll such actions shall be filed

in [the district court]."  (S.ROA(298) at 88.)

A.     **The Stanford Ponzi scheme.**

The Stanford entities were operated as a massive Ponzi scheme that ultimately defrauded thousands of investors out of billions of dollars.  Davis, the former Chief Financial Officer of Stanford Financial Group Company and SIB, pled guilty to federal charges of fraud, conspiracy to commit fraud, and conspiracy to obstruct an SEC proceeding, and admitted that the Stanford entities were operated as a Ponzi scheme from the very beginning.  (*See* Doc. 771 at 44 ¶ 17(n) (discussing Stanford, Davis, and other conspirators creating "massive Ponzi scheme"); Doc. 807 at 16:16–17, 21:6–8, 21:15–17 (admitting the Stanford Ponzi fraud was a "massive Ponzi scheme ab initio").)[3]  Early in its review and analysis of the Stanford enterprise, the SEC concluded that the SIB CDs were quite likely a "very large ponzi scheme, designed and marketed by SIB[] and SGC[] to lull investors into a false sense of security by their claims that the SIB products are similar to traditional U.S. bank CDs." ( *See* R. at 3111–13.)

When investors purchased fraudulent SIB CDs, the Stanford Ponzi scheme diverted the proceeds from those purchases to highly speculative and illiquid investments, to purported SIB CD interest and redemption payments to other investors, to various pet projects used by Allen Stanford to project the

---

[3] Unless otherwise stated, citations to docket numbers refer to the court records from the SEC lawsuit, styled *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*, No. 3:09-CV-0298-N (N.D. Tex., filed Feb. 17, 2009).

illusion that the Stanford entities comprised a successful, legitimate financial services company, and to Allen Stanford and his cronies to fund their lavish lifestyles.  (*See generally* Doc. 952.)  The Stanford Ponzi scheme also used SIB CD proceeds to fund extravagant salaries, commissions, bonuses, and other forms of compensation—all of which were used by the Stanford Ponzi scheme to incentivize the aggressive marketing of SIB CDs by Stanford financial advisors to innocent investors.  (*See* ROA at 318–20.)  At the inception of the Receivership in February 2009, the total outstanding amount of SIB CDs was approximately $7.2 billion, yet the combined assets of all the Stanford entities were valued at far less than $1 billion.  (*See* ROA at 303.)

## B.    The Receiver's claims against former employees.

The Receiver has asserted fraudulent transfer claims and unjust enrichment claims against more than 300 former Stanford employees (the "Employee Defendants").[4]  (*See* R. at 1005–30, 2611–27.)  The Receiver seeks to recover fraudulent transfers made by the Stanford Ponzi scheme to the Employee Defendants in the form of both compensation related to SIB CD sales and SIB CD proceeds related to the Employee Defendants' own SIB CD

---

[4] Not all of the Employee Defendants have appealed the district court's ruling on the motions to compel arbitration.  Where it is necessary to refer to an argument asserted by a particular sub-group of the Employee Defendants, references in the text and in the citations will be as follows: (1) the Employee Defendants represented by Andrews Kurth (the "115 FA Defendants"); (2) the Employee Defendants represented by Jason Graham (the "Eight FA Defendants"); and (3) the Employee Defendants represented by Pat Sadler (the "Eleven Defendants").

investments.   The Receiver has not asserted any contract claims against the Employee Defendants.   Nor has the Receiver asserted any claim that arises out of any agreement between SGC and the Employee Defendants.

The Stanford Ponzi scheme utilized an elaborate and sophisticated incentive program to encourage Stanford financial advisors, including the Employee Defendants, to aggressively market SIB CDs to their brokerage clients. (*See* Doc. 952, ¶¶ 28–29.)   The incentive program was comprised of several categories of compensation designed to increase SIB CD sales and to prevent the Employee Defendants from asking too many questions, including: (1) up-front, forgivable loans paid to the Employee Defendants for moving their clients to SGC; (2) SIB CD commissions at above-market rates; (3) SIB quarterly bonuses; (4) branch managing director quarterly compensation; (5) Performance Appreciations Rights ("PARs") payments; and (6) severance payments. (*See* ROA at 318–20.)

SIB had one principal product line and one principal source of funds—SIB CDs and SIB CD sales, respectively.  (*See* ROA at 302.)  But SIB did not sell the SIB CDs; instead, the Stanford Ponzi scheme relied on Stanford financial advisors employed by other Stanford entities, including SGC, to sell SIB CDs to their brokerage clients.  (*See* ROA at 302; R. at 3937.)

The Receiver and his professionals have undertaken an extensive analysis of SIB's bank accounts, including SIB's primary operating accounts and two of its money market accounts.  (*See* ROA at 307–08.)  Almost all of the funds deposited into each of these accounts were the proceeds from SIB CD sales.  (*See* ROA at 307–08.)  These same accounts were the source of compensation paid out to the Employee Defendants in connection with their SIB CD sales.  (*See* ROA at 319–20.)  Thus, the substantial majority of the payments made to the Employee Defendants in connection with their SIB CD sales came directly from the proceeds of SIB CD sales.  (*See* ROA at 306, 318–19.)

SIB paid disproportionately large commissions to SGC as compensation for the sale of SIB CDs.[5]  (*See* Doc. 952 at ¶¶ 28–29.)  For example, SIB paid SGC a 3% commission (also called a "referral fee") on the initial sale of a SIB CD, and 3% annually for the life of the CD.  (Doc. 952 at ¶¶ 28–29.)  In 2007 alone, SIB paid SGC and its affiliates more than $291 million in management fees and SIB CD commissions.  ( Doc. 952 at ¶ 30.)  SGC used these payments to pay SGC financial advisors, including the Employee Defendants, above-market commissions of 1% or more on the initial sale of CDs and an annual 1%

---

[5] SGC was the registered broker-dealer that employed the majority of the Employee Defendants. The SEC has reported that by 2004, SIB CD sales accounted for more than 70% of SGC's revenues.  (*See* R. at 3061.)

commission on all amounts their customers had in SIB CDs for that year. (*See* ROA at 318.)

At all relevant times, SGC and the Employee Defendants failed to conduct *any* due diligence activities related to SIB's investment portfolio or SIB's above-market CD rates. There is no evidence in the record that the Employee Defendants received the transfers at issue from the Stanford Ponzi scheme in objective good faith. (R. at 3063, 3089.) In fact, the evidence that *is* in the record establishes that the Employee Defendants either knew or should have known that the Stanford entities were being operated as a massive fraud when they received the payments that the Receiver is attempting to recover through his claims.

## V

## STANDARD OF REVIEW

The denial of a motion to compel arbitration is subject to *de novo* review. *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) ("We review *de novo* a district court's denial of a motion to compel arbitration."(citation omitted)).

## VI

## SUMMARY OF THE ARGUMENT

In asserting his fraudulent transfer claims, the Receiver stands in the shoes of the Stanford creditors, not the insolvent Stanford entities that made the

fraudulent transfers. Because the Stanford creditors are not party to any arbitration agreement between the Employee Defendants and SGC, the Receiver cannot be compelled to arbitrate his fraudulent transfer claims against the Employee Defendants. Such a holding is hardly novel, and is, in fact, perfectly in line with consistent legal precedent going back nearly a century.

The fundamental flaw in the Employee Defendants' position stems directly from their refusal to recognize the well-established principle that the Receiver may pursue claims in at least two different capacities. On the one hand, the Receiver has standing to assert claims that belong to the Stanford entities, including tort claims and breach-of-contract claims. And when doing so, the Receiver (as many cases recognize) stands in the shoes of the Stanford entities.

However, for nearly a century, courts have recognized that under certain circumstances, receivers may act in a second capacity—they may act as a representative on behalf of the creditors of the entities in receivership. As to when a receiver may act in this second capacity, courts have distinguished between two categories of creditor claims. The first category is comprised of claims that are personal to a particular creditor and that do not extend beyond the loss suffered by each particular creditor who sues. Generally, tort claims for damages and breach-of-contract claims are considered to be part of this first category. The second category of creditor claims includes claims that are *not* personal to any

14

particular creditor and that belong to *all* of the creditors of the insolvent entity.  It is well recognized that when asserting claims that fall under this second category, receivers are properly acting in their second capacity—acting as a representative on behalf of the creditors of the entity in receivership.

When the Receiver asserts statutory fraudulent transfer claims under TUFTA to recover fraudulent transfers made by the Stanford Ponzi scheme, he is acting as a representative on behalf of the creditors of the Stanford entities because his fraudulent transfer claims do not belong solely to any particular creditor. Fraudulent transfer claims do not belong to the debtor entity that made the transfer. Under almost every state's fraudulent transfer statute, only *creditors* have the right to assert claims to recover the value of such transfers.  The focus of a fraudulent transfer claim is not the creditor who brings the claim; rather, the focus is on the debtor-transferor's intent and solvency.  Thus, fraudulent transfer claims are not personal to any particular creditor, and the Receiver has standing to assert such claims against the Employee Defendants on behalf of the Stanford creditors. Further, when the Receiver asserts claims in his second capacity acting as a representative on behalf of the creditors of the Stanford entities (as is the case here), the Receiver is as much a stranger to any arbitration agreement between the Stanford entity that made the transfer and the recipient of the fraudulent transfer as is any other third-party creditor.

The Employee Defendants also argue that SIB investors had signed arbitration agreements with SGC, and, therefore, that these investors are bound to arbitrate their claims against the Employee Defendants.  That argument, however, assumes that the Stanford creditors are all former Stanford investors. They are not.  Because the Receiver is asserting claims on behalf of the Stanford creditors as a general class, the argument that certain individual creditors signed arbitration agreements with SGC or SIB has no bearing on whether the Receiver is required to arbitrate his claims.

The Employee Defendants also argue that the Receiver should be estopped from refusing to comply with the arbitration agreements because he is seeking to take advantage of the Employee Defendants' contracts with SGC.  The Employee Defendants' argument relies on the false premise that the Receiver is seeking a benefit from the Employee Defendants' contracts with SGC.  The Receiver is seeking no such benefit.  His claims do not rely on the existence of any contract.  The Receiver's claims are based on the straightforward premise that the Employee Defendants received payments from the Stanford Ponzi scheme and that those payments were made with the intent to defraud.  The terms of the contracts pursuant to which the payments were made is of no relevance to the Receiver or his claims.

Finally, the Receiver's unjust enrichment claims are not subject to arbitration. The Receiver is not asserting his unjust enrichment claims on behalf of SGC, and, accordingly, the arbitration agreements between SGC and the Employee Defendants do not apply to the Receiver's claims. As to the Employee Defendants' argument that the Stanford creditors do not have an unjust enrichment claim at all, that is an argument on the merits, which is appropriately addressed to the district court in the first instance. It has no bearing on the motion to compel arbitration that is before this Court.

## VII

## ARGUMENT

**A.    The Receiver's fraudulent transfer claims are not subject to SGC's arbitration obligations.**

When determining whether to compel arbitration, courts must determine: (1) "whether there is a valid agreement to arbitrate *between the parties*," and (2) "whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (emphasis added). The Court need not reach the second part of this analysis in this case because "[t]he Receiver, acting on behalf of the [Stanford] creditors, is not party to the arbitration obligations *between SGC and the Employee Defendants*." (Order, S.R.7 at 3521 (emphasis added).)

17

The Employee Defendants argue that the Receiver's claims are subject to arbitration because the Receiver simply "stands in the shoes" of SGC, and any claims asserted by SGC against the Employee Defendants would be subject to arbitration.  However, as the Court has already recognized, the Receiver does not assert his claims on behalf of the *debtor* entity who made the fraudulent transfers to the Employee Defendants (*i.e.*, SGC); rather, the Receiver asserts his fraudulent transfer claims in his capacity as a *creditor* or as a *representative of the creditors* of the Stanford entities.  *See Alguire II*, 647 F.3d at 601 ("[T]he district court weighed the interests of the Employee Defendants against the interests represented by the Receiver (*i.e.*, the interests of the creditors).").

### 1.     The Receiver has standing to bring fraudulent transfer claims on behalf of the Stanford creditors.

The Receiver's standing to assert fraudulent transfer claims on behalf of the Stanford creditors is well established.  "The Fraudulent Transfer Act provides a cause of action to *creditors* of debtors who fraudulently transfer assets under certain circumstances."  *Cycle Sport, L.L.C. v. Dinli Metal Indus. Co., Ltd.*, No. 3:07-CV-00253-O, 2008 WL 4791544, at *4 (N.D. Tex. Oct. 30, 2008) (emphasis added).  Thus, the statutory claims that the Receiver is pursuing belong only to creditors, not to the insolvent debtor who made the fraudulent transfer in the first place.  S*ee* Tex. Bus. & Com. Code § 24.008 (West 2009) ("In an action for relief against a transfer or obligation under this chapter, *a creditor . . .* may

obtain [various forms of relief]."); *Am. Nat'l Bank of Austin v. MortgageAmerica Corp.* (*In re MortgageAmerica Corp.*), 714 F.2d 1266, 1272 (5th Cir. 1983) ("An action under the Texas [Fraudulent Transfer] Act, for our purposes, does appear to be assertable only by a debtor's creditors . . . .").

This Court has long held that receivers may assert claims on behalf of the creditors of an entity in receivership. *See, e.g.*, *Drennen v. S. States Fire Ins. Co.*, 252 F. 776, 787 (5th Cir. 1918) ("It is not, however, true that the receiver stands in the place alone of the corporation. He is, in addition, . . . acting also for . . . the creditors of the corporation."); *Meyers v. Moody*, 693 F.2d 1196, 1206 (5th Cir. 1982) ("Moody also argues that Receiver did not have standing to sue on behalf of Empire's shareholders, policyholders or creditors. The law in Texas is to the contrary. . . . Moody's challenges to plaintiff's standing are without merit." (internal citations omitted)); (*cf.* Order, S.R.7 at 3523 ("[T]he Receiver contends that receivers have long held the power to assert creditor claims. [The Court] agree[s]." (second and third alteration in original) (adopting the language and reasoning found in this Court's withdrawn opinion))).

The Employee Defendants simply ignore long-standing precedent establishing that the Receiver may act in this dual capacity.[6] *See McGinness v.*

---

[6] There is no question that the Stanford creditors have standing to sue. Thus, the only issue in this appeal is whether the Receiver is entitled to assert his claims as a representative of the Stanford creditors. Thus, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), and the other

*United States*, 90 F.3d 143, 146 (6th Cir. 1996) ("Upon his appointment, the receiver succeeded to the rights of not only the debtor, but also the creditor."); *see also SEC v. Cook*, No. CA 3:00-CV-272-R, 2001 WL 256172, at *2 (N.D. Tex. Mar. 8, 2001) ("[A] receiver represents not only the entity in receivership, but also the interests of the creditors. After all, the very purpose of receivership is to secure the assets of the corporation for ultimate payment to the creditors." (internal citations omitted)); *Fla. Dept. of Ins. v. Chase Bank of Tex. Nat'l Assoc.*, No. CIV. A. 3:99CV1254G, 2000 WL 36065, at *4, *7 (N.D. Tex. Jan. 14, 2000) (rejecting argument that receiver lacked standing because he only "stands in the shoes" of receivership entity and holding that "under Texas law and as a matter of public policy, the receiver here has standing to bring its claims against Chase on behalf of [the receivership entity's] shareholders"); *Cotten v. Republic Nat'l Bank of Dallas*, 395 S.W.2d 930, 941 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.) ("Certainly a receiver . . . has a right to maintain a suit which is necessary to preserve the corporation's assets and to recover assets of which the corporation has been wrongfully deprived through fraud. In such a suit the receiver may be said to

---

general standing cases cited by the Eight FA Defendants have no application to the issues before the Court. Indeed, the Eight FA Defendants acknowledge that the Receiver may pursue claims belonging to the Stanford entities, irrespective of any personal injury to the Receiver and without any congressional authorization. (*See* Eight FA Defs.' Br. at 11.) The Eight FA Defendants' argument really amounts to nothing more than an argument that federal equity receivers have not historically been permitted to pursue claims on behalf of creditors generally. For all of the reasons outlined herein, the Eight FA Defendants are simply incorrect about the historical role of federal equity receivers.

sue as the representative of the corporation *and its creditors, stockholders and policyholders.*" (emphasis added)); *Guardian Consumer Fin. Corp. v. Langdeau*, 329 S.W.2d 926, 934 (Tex. Civ. App.—Austin 1959, no writ) ("[W]hen the receiver acts to protect innocent creditors of insolvent corporations, . . . *the receiver acts in a dual capacity*, as a trustee for both the stockholders and the creditors, and as trustee for the creditors[,] he can maintain and defend actions done in fraud of creditors even though the corporation would not be permitted to do so." (emphasis added)); *cf. Wing v. Hammons*, No. 2:08-CV-00620, 2009 WL 1362389, at *3 (D. Utah May 14, 2009) ("[A] receiver in a Ponzi case *is* defined as a creditor for the purposes of establishing standing." (emphasis in original)); 65 Am. Jur. 2d *Receivers* § 88 (2001) ("It is a general rule that a receiver stands in the position of a representative and a protector of the interests of creditors . . . ."), *id.* at § 371 ("A receiver is the embodiment of creditors standing as an agent for them, representing them with the power to do acts that a mere agent of a defunct company could not do, including the power to bring suit on their behalf."); (*cf. also* Order, S.R.7 at 3522 ("It is well settled that, at different points during the pendency of the receivership, a receiver may represent different interests." (citing *McGinness*, 90 F.3d at 146))).

If the rule were otherwise, the Receivership would be severely disrupted by the chaos of thousands of creditors racing to the courthouse to file

individual fraudulent transfer lawsuits. *Cf. In re MortgageAmerica Corp.*, 714 F.2d at 1275–76 ("[The Bankruptcy Code] allows the bankruptcy trustee to *step into the shoes of a creditor* for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors, not just those who win a race to judgment. . . . Any other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served. *Even without the Bankruptcy Code and the policies that support it, we would be reluctant to elevate such a principle to a rule of law.*" (emphasis added)); *Picard v. JP Morgan Chase & Co.* ("*Picard II*"), 460 B.R. 84, 95 (S.D.N.Y. 2011) ("Courts reason . . . that allowing individual creditors to pursue certain claims common to all of them would result in the kind of rush to judgment and inconsistent adjudications that the bankruptcy laws exists to avoid.  Thus, to further the goals of the bankruptcy laws generally, such claims should be deemed vested in the trustee, with exclusive standing to pursue them for the benefit of all creditors.").

Such a race to the courthouse would also conflict with the duties of the Receiver, who has been directed by the district court to marshal all of the assets of the Stanford entities for the benefit of all the Stanford creditors.  (*See* Doc. 1130 at 7 (ordering the Receiver to "[p]reserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursement thereof to

claimants"); Doc. 1130 at 5 (authorizing the Receiver to "[i]nstitute such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate"); *see also* S.ROA(298) at 88–89.)  Thus, it was perfectly appropriate for the district court to empower the Receiver to assert fraudulent transfer claims and, as this Court has recognized on two previous occasions, to prevent a race to the courthouse by staying the claims of Stanford creditors.  *See SEC v. Stanford Int'l Bank, Ltd.*, 429 Fed. Appx. 379 (5th Cir. 2011); *SEC. v. Stanford Int'l Bank, Ltd.*, 424 Fed. Appx. 338 (5th Cir. 2011).

Indeed, in cases involving both federal and state receiverships, courts from all over the country have consistently held that receivers have standing to assert fraudulent transfer claims.  *See, e.g.*, *Donell v. Kowell*, 533 F.3d 762, 777 (9th Cir. 2008) (holding that receiver had standing to pursue fraudulent transfer claims on behalf of creditors (citing *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995)); *Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp.*, No. 04-CV-4971(NG)(MDG), 2011 WL 2414685, at *7 (E.D.N.Y. June 8, 2011) (holding that receiver had standing to pursue fraudulent conveyance claims on behalf of creditors and distinguishing *Eberhard* on the basis that *Eberhard*'s reasoning does not apply where receiver "seeks to recover funds fraudulently conveyed from [entities in receivership] to other persons"); *Wing v. Wharton*,

No. 2:08-CV-00887-DB, 2009 WL 1392679, at *3–*4 (D. Utah May 15, 2009) (approving receiver's fraudulent transfer pleading); *Wing v. Kendrick*, No. 2:08-CV-01002-DB, 2009 WL 1362383, at *2 (D. Utah May 14, 2009) (same); *Hodgson v. Kottke Assocs., LLC*, Civil Action No. 06‑5040, 2007 WL 2234525, at *7 (E.D. Pa. Aug. 1, 2007) (observing that receiver had standing to assert fraudulent transfer claims); *In re Wiand*, 2007 WL 963165, at *2 (M.D. Fla. Mar. 27, 2007) (holding that receiver had standing to bring fraudulent transfer claims); *Warfield v. Arpe*, Civil Action No. 3:05-cv-1457-R, 2007 WL 549467, at *7 (N.D. Tex. Feb. 22, 2007) (receiver may sue to recover fraudulently-transferred funds); *Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1126–27 (D. Ariz. 2006) (receiver had standing to bring state-law claims for fraudulent transfers); *Terry v. June*, 432 F. Supp. 2d 635, 639–43 (W.D. Va. 2006) (granting partial summary judgment in favor of receiver on fraudulent transfer claims); *Quilling v. Cristell*, No. Civ.A. 304CV252, 2006 WL 316981, at *6 (W.D.N.C. Feb. 9, 2006) (receiver has standing to bring fraudulent transfer claims); *Quilling v. Grand St. Trust*, No. 3:04 CV 251, 2005 WL 1983879, at *6 (W.D.N.C. Aug. 12, 2005) (same); *Marion v. Benistar*, Ltd., No. Civ.A. 03-4700, 2005 WL 563698, at *1 (E.D. Pa. Mar. 10, 2005) (denying motion to dismiss receiver's fraudulent transfer claim); *Wing ex rel. 4NExchange, L.L.C. v. Yager*, No. 103CV54DAK, 2003 WL 23354487, at *2–*3 (D. Utah Nov. 7, 2003) (same); *Obermaier v. Arnett*,

No. 2:02CV111FTM29DNF, 2002 WL 31654535, at *4 (M.D. Fla. Nov. 20, 2002) (receiver has standing to bring fraudulent transfer claim); *Scholes v. African Enter., Inc.*, 838 F. Supp. 349, 355–56 (N.D. Ill. 1993) (same).

Conversely, the Employee Defendants' argument that a receiver can *never* assert fraudulent transfer claims finds no support in the law. While it may be true that receivers lack standing to bring claims that are personal to a *particular* creditor,[7] it is clear that receivers have standing to assert claims that belong to all creditors *generally*. *See McCandless v. Furlaud*, 296 U.S. 140, 159 (1935) ("If the shareholders and the directors had combined with the promoters to despoil the corporation and defeat the remedies of creditors by a gift of half the assets, the gift could have been annulled either by the creditors directly *or in their behalf by a receiver*." (emphasis added)). Here, the Receiver's fraudulent transfer claims are not personal to any particular Stanford creditor. Thus, the linchpin of the Employee Defendants' entire argument—the "general rule" that a receiver cannot assert claims that belong to creditors—does not apply to the Receiver's fraudulent

---

[7] *Cf. Cotten v. Republic Nat'l Bank of Dallas*, 395 S.W.2d 930, 941 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.) ("Certainly a receiver . . . has a right to maintain a suit which is necessary to preserve the corporation's assets and to recover assets of which the corporation has been wrongfully deprived through fraud. In such a suit the receiver may be said to sue as the representative of the corporation and its creditors, stockholders and policyholders. . . . But some actions for fraud are *by their nature personal to each creditor*, or each stockholder, or each policyholder, and the receiver may not then maintain a suit in his representative capacity for their joint benefit. In such case each claimant and he alone may bring and maintain the suit himself, *for the action is personal*, separate and several, not joint, *and extends no further than the individual loss of each particular creditor who sues*. . . . The receiver has no right to bring or maintain such a suit." (emphasis added)).

transfer claims.  (*Cf.* Order, S.R.7 at 3522 ("Were this general rule the only rule, . . . the Employee Defendants would prevail and the Receiver would be bound by the arbitration agreements.  As is often the case, however, the general rule comes with a few caveats." (alteration in original)).)

Accordingly, because the Receiver has standing to assert his fraudulent transfer claims on behalf of the Stanford creditors, his claims are not subject to SGC's arbitration obligations.  (*See* Order, S.R.7 at 3524 ("[I]n this case, the Receiver is acting on behalf of creditors, who are not party to the arbitration agreements [between SGC and the Employee Defendants] and therefore [the Receiver] is not bound by the arbitration agreement.")); *see also Ross v. Health & Ret. Props. Trust*, 703 N.E.2d 734, 739 (Mass. App. Ct. 1998) (affirming denial of motion to compel creditor's fraudulent transfer claim where transferor—and not creditor—signed arbitration agreement); *cf. In re Gandy*, 299 F.3d 489, 495–97 (5th Cir. 2002) (declining to compel arbitration of fraudulent transfer claim asserted by bankruptcy trustee and distinguishing prior authority by noting that "the transactions alleged to be fraudulent in this case are not subject to the same kind of attack by Debtor outside of bankruptcy"); *cf. also Hollander v. Heaslip*, 222 F. 808, 813 (5th Cir. 1915) (stating that "it may be assumed, without being decided, that when the demand is sought to be enforced by the receiver for the

benefit of creditors of the original obligee," the receiver would be entitled to have the benefit of an estoppel flowing only to the creditors of the receivership entity).

2.    **The cases cited by the Employee Defendants do not support their position that the Receiver lacks standing to bring fraudulent transfer claims on behalf of the Stanford creditors.**

Despite the well-established precedent discussed and cited above, the Employee Defendants maintain that the Receiver does not have standing to bring his fraudulent transfer claims on behalf of the Stanford creditors.[8]   (*See, e.g.*, 115 FA Defs.' Br. at 18; Eight FA Defs.' Br. at 9.)   The 115 FA Defendants, for example, declare that the "rule" they advocate "is axiomatic" and "is supported by an unbroken line of authority dating back 75 years." (115 FA Defs.' Br. at 18.) The case law provides no support for their assertions.   In fact, *none* of the cases cited by the 115 FA Defendants held that the receiver in that case lacked standing to assert fraudulent transfer claims that belonged to the entire class of creditors of the entity in receivership.   And *all* of the cited cases are consistent with the recognized distinction between claims that are personal to a particular creditor and claims that belong to all the creditors generally.

---

[8] The Employee Defendants further assert that the Securities Litigation Uniform Standards Act ("SLUSA") may apply to the Receiver's claims if he is permitted to act as a representative of the Stanford creditors.   That issue is not properly before the Court.   However, even it were, the Receiver notes that the Employee Defendants' position is incorrect for many reasons, including, but not limited to, the fact that SLUSA only applies to class-action claims maintained by private party plaintiffs. *See* 78 U.S.C. § 78bb(f)(1).

Of the nine cases cited by the 115 FA Defendants in support of their "axiomatic" rule, five of them did not involve any fraudulent transfer claim at all. *See Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416, 431–32 (1972) (holding that trustee did not have standing to bring tort claim belonging *only* to small subset of creditors); *Marion v. TDI Inc.*, 591 F.3d 137, 148 (3d Cir. 2010) (holding that receiver had standing to assert tort claims for injuries suffered by corporation as result of defendants' facilitation of Ponzi scheme); *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 796 (6th Cir. 2009) (holding that receiver had standing to seek rescission of insurance policy); *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 622, 627 (6th Cir. 2003) (holding that receiver had standing to bring tort claims on behalf of entities in receivership); *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24–25 (1st Cir. 1990) (holding that receiver did not have standing to bring claims under Commodity Exchange Act where order appointing receiver did not grant receiver authority to bring claims "on behalf of individual investors" and funds in particular accounts that were allegedly mismanaged by defendants "belonged entirely to investors, not to [the receivership entity]" (citation omitted)).[9]

---

[9] *Caplin* and *Fleming* are consistent with the general principle that receivers do not have standing to assert creditor claims that "are by their nature personal to each creditor." *Cotten*, 395 S.W.2d at 941. Neither case is relevant to the issue of whether the Receiver has standing to assert fraudulent transfer claims that belong to the Stanford creditors generally. For this same reason, the 115 FA Defendants' reliance on two decisions in the Madoff litigation is misplaced. *See Picard v. JP Morgan Chase & Co.* ("*Picard II*"), 460 B.R. 84, 89–90, 95 (S.D.N.Y. 2011)

Of the four cases cited by the 115 FA Defendants that involve fraudulent transfer claims (or that addressed them conceptually), three of them held that the receiver did in fact have standing to pursue his claims. *See, e.g.*, *McCandless*, 296 U.S. at 159 ("If the shareholders and the directors had combined with the promoters to despoil the corporation and defeat the remedies of creditors by a gift of half the assets, the gift could have been annulled either by the creditors directly *or in their behalf by a receiver*." (emphasis added)); *Lehmann*, 56 F.3d at 758 (holding that receiver had standing to assert fraudulent conveyance claims); *Donell*, 533 F.3d 776–77 (same).

In the final case cited by the 115 FA Defendants, although the court held that a receiver appointed to represent *only* the personal estate of the fraudster who perpetrated the fraudulent scheme did not have standing to assert fraudulent transfer claims under New York law, the court noted that it may have held differently if the receiver had been appointed to represent the entities as well. *See Eberhard v. Marcu*, 530 F.3d 122, 133–34 (2d Cir. 2008) (distinguishing case where receivership "specifically included the corporations manipulated by the

(holding that SIPA trustee did not have standing to assert various common-law tort claims for damages against third parties who allegedly violated duties owed to creditors and distinguishing cases holding "that when a claim is *'general' to all creditors*, and any one of them could bring the claim and all would benefit in the same way by establishing it, the trustee *may* assert the claim *'on behalf'* of the creditors" (emphasis added)); *Picard v. HSBC Bank PLC* ("*Picard I*"), 454 B.R. 25, 28 (S.D.N.Y. 2011) (holding that SIPA trustee did not have standing to assert various common-law tort claims for damages against third parties who allegedly violated duties owed to creditors).

[fraudster]").  Here, the Receiver represents all of the Stanford entities, not just

Allen Stanford.

In addition to several of the cases cited by the 115 FA Defendants, the

Eight FA Defendants rely on *Boston Trading Grp., Inc. v. Burnazos*, 835 F.2d

1504 (1st Cir. 1987).  *Burnazos* is easily distinguished.  In *Burnazos*, the question

was the scope of the authority that had been granted to the receiver in that

particular case.  The First Circuit held that the receiver in that case could not bring

fraudulent conveyance claims on behalf of the creditors of two receivership entities

because the district court's appointment order expressly limited his authority to

bringing claims on behalf of the two receivership entities.[10]  *See id.* at 1514

("The Receiver draws his authority to sue from a court order that gives him 'full

power to prosecute all claims . . . *on behalf of NIS and BTG.*'" (emphasis in

original)).  The word "standing" does not appear anywhere in the court's opinion.

In fact, the court clearly defined the scope of its limited holding:

> Perhaps, if the Receiver had requested authorization to
> bring such a suit, the district court would have granted it
> (or would do so now).  We express no opinion on *the*
> *lawfulness* or the desirability of any such expanded
> authority.  . . .  [W]e simply find that the authorizing
> language, in its present form, . . . does not now permit the
> Receiver to assert [his] claims.

---

[10] *Burnazos* involved fraudulent conveyance claims asserted under the Massachusetts Fraudulent
Conveyance Act, which, like TUFTA, only allows "creditors" to bring claims to set aside
conveyances.  *See Boston Trading Grp., Inc. v. Burnazos*, 835 F.2d 1506–07 (1st Cir. 1987).

*Id.* at 1515–16 (emphasis added).  In the case before this Court, the authority granted the Receiver by the district court is not so limited.  (*See* S.ROA(298) at 87–88 ("[T]he Receiver is specifically directed and authorized to . . . "[i]nstitute such actions or proceedings to . . . recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate.").)  And, in any event, the Employee Defendants have not challenged the scope of the Receiver's court-given authority, and *Burnazos* did not address the issue that is before this Court—whether an equity receiver can *ever* be given standing to bring claims on behalf of creditors.

The crux of the Employee Defendants' argument is that since the Supreme Court's 1935 decision in *McCandless v. Furlaud*, it has been well settled that receivers cannot assert claims on behalf of creditors.  (*See, e.g.*, 115 FA Defs.' Br. at 20; Eight FA Defs.' Br. at 12.)  *McCandless*, however, contains no such holding and provides no support for the Employee Defendants' position.  In *McCandless*, the issue was whether the receiver of an insolvent corporation could sue the directors and promoters of the corporation to recover assets that had been "fraudulently diverted" from the entity, where the defendants argued that the corporation had consented to the dissipation of its assets because the defendants were the corporation's sole shareholders at the time of the challenged acts.  *See* 296 U.S. at 160.  The Second Circuit had held that the receiver could not

recover against the defendants because "the corporation, its incoming shareholders, and the receiver were bound by [the corporation's] consent, *whatever remedies might be available at the suit of a defrauded creditor.*" *Id.* at 156 (emphasis added).

The Supreme Court reversed, holding that it was unnecessary to determine whether a claim could be asserted on behalf of the corporation in receivership because the receiver's claims were properly asserted on behalf of the corporation's creditors:

> No consent of shareholders could make such conduct lawful *when challenged by the receiver as the representative of creditors.* If the shareholders and the directors had combined with the promoters to despoil the corporation and defeat the remedies of creditors by a gift of half the assets, the gift could have been annulled *either* by the creditors directly *or in their behalf by a receiver.* . . . There is no occasion to consider whether the corporation itself at the instance of new shareholders would be permitted to disaffirm the fraud and maintain a suit in equity for appropriate relief. *We put that question by. It is enough that the receiver has the requisite capacity.* A court of equity has taken hold of the assets of this company . . . for administration as a trust in accordance with equitable principles. Included in those assets are moneys fraudulently diverted to the prejudice of creditors. There is power *at the instance of the receiver* to bring them back into the trust.

*Id.* at 159–61 (emphasis added) (internal citations omitted); *see also id.* at 162 ("Precedents exist in cases of insolvency for a suit by a trustee as a representative of creditors.").

In reaching its holding, *McCandless* also recognized the importance of the distinction discussed above—the distinction between claims that are personal to a particular creditor (*i.e.*, common-law tort claims for damages) and claims that belong to all of an entity's creditors (*i.e.*, fraudulent transfer claims seeking disgorgement):

> We find it immaterial that the defendants or some of them may be liable to creditors *in common-law actions* to recover *damages* for false representations as to the value of the assets. That is *not* the basis of the suit before us now. . . . As we have striven to make clear, the receiver does not claim to have succeeded to the rights of bondholders or noteholders *to recover damages for deceit* [(*i.e.*, personal claims)]. The wrong that is here redressed is the unlawful depletion of the assets whereby the company was made insolvent and the creditors were defrauded of their lawful rights and remedies.[11]

*Id.* at 167 (emphasis added); *see also In re Huff*, 109 B.R. 506, 510–11 (Bankr. S.D. Fla. 1989) (discussing *McCandless* and noting that "although the receiver does not succeed to causes of action *vested personally* in the creditors, it does have the responsibility and standing to act for the benefit of those creditors" (emphasis added)) (citing and harmonizing *McCandless*, 65 Am. Jur. 2d *Receivers* § 139 (2001), and *Meyers v. Moody*, 693 F.2d 1196 (5th Cir. 1982), as well as

---

[11] The dissent's opinion in *McCandless* provides further support for the proposition that the majority held that the receiver had standing to assert his claims on behalf of the creditors because his claims were not personal to any particular creditor and thus belonged to all the creditors of the corporation in receivership. *See McCandless v. Furlaud*, 296 U.S. 140, 173–74 (1935) (Roberts, J., dissenting) (noting that the majority held that individual causes of action belonging to creditors "may be grouped in the receiver" and that all classes of creditors, including trade creditors and employee creditors, would benefit from the receiver's recovery).

other cases standing for the proposition that the "receiver . . . represents . . . creditors").

*McCandless*'s holding—that the receiver in that case had standing to assert his claims on behalf of the creditors of the corporation—could not have been stated in clearer terms. Nevertheless, the Employee Defendants contend that *McCandless* somehow supports *their* position, not the Receiver's. (*See, e.g.*, 115 FA Defs.' Br. at 20; Eight FA Defs.' Br. at 12.) Yet, instead of citing or quoting *McCandless* itself in support of their interpretation of its holding, the Employee Defendants rely on a single reference to *McCandless* in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), where the Supreme Court held that the trustee in bankruptcy did not have standing to assert certain tort claims belonging to a group of debenture holders comprising only a subset of the estate's creditors. *Id.* at 434.

But *Caplin* did not disturb *McCandless*'s holding. *Caplin* merely rejected the bankruptcy trustee's argument that *McCandless* provides support for the proposition that a bankruptcy trustee has standing to assert tort claims that are personal to a particular creditor—or, as was the case in *Caplin*, a particular *group* of creditors. *See id.* at 431 (concluding that the debenture holders were "the persons truly affected by the suit"). The trustee in *Caplin*—like the Employee Defendants in this case—simply ignored the distinction (clearly recognized in

*McCandless*) between claims that are personal to a particular creditor and claims that belong to all of the creditors of an entity.  Because the Receiver's claims are not personal to any particular Stanford creditor, they are properly asserted by the Receiver on behalf of all the Stanford creditors.

The flaw in the Employee Defendants' argument is also illustrated by *Scholes v. Lehmann*, where the Seventh Circuit held that in the context of a Ponzi scheme, the receiver for a corporate transferor is entitled to seek the return of funds that the corporation was wrongfully compelled to transfer by the operator of the Ponzi scheme.  56 F.3d at 754–55.

In *Scholes*, the defendants argued that the corporate transferors in that case could not have been injured by their own conduct in transferring the money.  *Id.* at 754.  The court held that the defendants' argument was valid only so long as the operator of the Ponzi scheme continued to control the corporate transferors.  *Id*.  Once the operator was removed and the receiver was appointed, the corporate transferors "became entitled to the return of the moneys—for the benefit not of [the operator] but of innocent investors—that [the operator] had made the corporations divert to unauthorized purposes."  *Id.* (citing *McCandless*, 296 U.S. at 167); *see also Cook*, 2001 WL 256172, at *2 ("[W]hile the debtor would not be entitled to 'set aside a transfer in fraud of his creditors . . . the receiver acting for the creditors may attack it.'  Given the foregoing exception, the Court holds that the

Receiver has standing to sue to avoid fraudulent transfers on behalf of the creditors of [the Ponzi scheme entity in receivership]." (internal citations omitted)); *Wheeler v. Am. Nat'l Bank of Beaumont*, 338 S.W.2d 486, 495 (Tex. Civ. App.—Beaumont 1960, writ granted) ("[T]here are instances where a corporation itself would not be permitted to sue for recovery of a true corporate asset because of its own fraudulent conduct in connection with the loss of the same. However, the receiver would not be so estopped. In such instances he may disaffirm or repudiate the fraudulent acts of the corporate officers and seek recovery of such assets for the benefit of the corporation and creditors. This is the rule in Texas."), *aff'd in part and reversed in part*, 347 S.W.2d 918 (Tex. 1961); *cf. In re Huff*, 109 B.R. at 513 ("The Defendants overlooked the principle of law that a receiver represents the rights of creditors and is not bound by former corporate officers' or directors' fraud.").

Thus, it is clear that the Receiver has standing to recover fraudulent transfers from the Stanford Ponzi scheme to the Employee Defendants because he is acting for the benefit of the Stanford creditors (and not for the benefit of the operator of the Stanford Ponzi scheme). *See Lehmann*, 56 F.3d at 754–55 ("Now that the corporations created and initially controlled by [the operator] are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and creditors, we cannot see an

objection to the receiver's bringing suit to recover corporate assets unlawfully

dissipated by [the operator].").

Accordingly, it would make little sense to allow the Receiver to bring

claims for the recovery of assets that were fraudulently transferred by the Stanford

Ponzi scheme (based on the idea that "the appointment of the [R]eceiver removed

the wrongdoer from the scene"), but to subject the Receiver's claims to arbitration

pursuant to arbitration agreements that SGC—one of Allen Stanford's former "evil

zombies"—entered in connection with those same transfers. *See id.* at 754;

*cf. In re Gandy*, 299 F.3d at 495–97 (declining to compel arbitration of fraudulent

transfer claim asserted by bankruptcy trustee and distinguishing prior authority by

noting that "the transactions alleged to be fraudulent in this case are not subject to

the same kind of attack by Debtor outside of bankruptcy").

### 3.    The cases cited by the Employee Defendants do not support their argument that the Receiver's fraudulent transfer claims are subject to SGC's arbitration obligations.

The Employee Defendants argue that the Receiver is bound by SGC's

arbitration obligations to the same extent that SGC would have been bound absent

the appointment of the Receiver.   However, none of the cases cited by the

Employee Defendants support their position that the Receiver's fraudulent transfer

claims are subject to SGC's arbitration obligations.  In fact, two of the case cited

by the Employee Defendants—*Javitch v. First Union Securities, Inc.* and *Hays &*

*Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*—are particularly instructive because they conclusively establish that the Receiver's fraudulent transfer claims are *not* subject to SGC's arbitration obligations.[12]

In *Javitch*, the case on which the Employee Defendants principally rely and that the district court found to be "easily distinguishable,"[13] a receiver

---

[12] The other cases cited by the Employee Defendants are simply inapposite. They merely stand for the proposition that a receiver's contract claim will be subject to arbitration if the contract serving as the basis for the claim contains an arbitration provision. *See, e.g.*, *Capitol Life Ins. Co. v. Gallagher*, No. 94-1040, 1995 WL 66602, at *2–*3 (10th Cir. Feb. 7, 1995) (holding that contract claims in class-action lawsuit against insurance company were not subject to mandatory arbitration merely because the same individual acted both as receiver for receivership entity who had assumed defendants' obligations under annuity policies and as representative of class in class-action lawsuit, where arbitration provision was contained in agreement between receivership entity and defendant, and receiver's appearance in class-action lawsuit was not in receiver's capacity as representative of receivership entity); *United States Small Bus. Admin. v. Coqui Capital Mgmt.*, No. 08 Civ. 0978(LTS)(THK), 2008 WL 4735234, *1–*2 (S.D.N.Y Oct. 27, 2008) (requiring arbitration of contract claims related to contract containing arbitration provision); *Moran v. U.S. Bank, N.A.*, No. 3:06CV050, 2007 WL 1023447, *7 (S.D. Ohio Jan. 4, 2007) (same); *Phillips v. Lincoln Nat'l Health & Cas. Ins. Co.*, 774 F. Supp. 1297, 1301 (D. Colo. 1991) (same). None of these cases are relevant to the Receiver's claims against the Employee Defendants.

[13] Adopting the language from this Court's withdrawn opinion in this case, the district court rejected the Employee Defendants' reliance on *Javitch*:

> The Employee Defendants rely heavily on [*Javitch*] to support their claim that receivers are also bound by arbitration agreements. *Javitch* is easily distinguishable. The *Javitch* receiver brought suit against a number of brokers and financial institutions that provided services to the insolvent corporation. *Id.* at 622. Akin to the instant case, the receiver claimed to bring the claims for defrauded investor creditors. *Id.* at 625. However, the receiver alleged that the defendants provided negligent services and breached fiduciary duties owed to the insolvent corporation. *Id.* at 622. Because the Javitch [sic] receiver sued on behalf of the insolvent corporation, and that corporation had enforceable arbitration agreements with the defendants, the Sixth Circuit held that the receiver was bound to arbitrate. *Id.* at 627. Here, . . . the Receiver's fraudulent transfer claims are brought on behalf of defrauded creditors under TUFTA, which looks to the actions of Stanford and not to the services

argued that he was not bound by the receivership entities' arbitration agreements because he was bringing his claims on behalf of the creditors of the entities in receivership. *See Javitch*, 315 F.3d at 625. The Sixth Circuit held that because the receiver's asserted claims were based on allegations that the defendants provided negligent services and breached fiduciary duties owed to the receivership entities (*i.e.*, tort claims for damages), the receiver's claims belonged to the receivership entities and were subject to the receivership entities' arbitration agreements. *Id.* at 625–27.[14]

In reaching that conclusion, *Javitch* relied on *Hays*, where a trustee in bankruptcy brought both tort claims for damages and statutory fraudulent transfer claims against the debtor's securities broker. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1150 (3rd Cir. 1989). Charged with determining whether some or all of the trustee's claims were subject to an arbitration agreement between the debtor and the defendant securities broker, *Hays* held that with respect to the trustee's tort claims, the trustee was bound by the arbitration agreement because tort claims for damages are derived from the rights

---

provided by the Employee Defendants. Tex. Bus. & Com. Code § 24.005.

(Order, S.R.7 at 3524 n.6.)

[14] Because the issue was not before it, the court "express[ed] no opinion concerning the receiver's standing to assert claims on behalf of any party other than [the receivership entities], or whether such claims would be subject to arbitration." *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 622, 627 n.7 (6th Cir. 2003).

of the debtor. *See id.* at 1153–54. By comparison, the court held that the trustee's fraudulent transfer claims were not subject to arbitration because such claims are not derived from the rights of the debtor and are properly asserted by a trustee acting on behalf of the creditors of the debtor entity. *See id.* at 1155 ("[The trustee's fraudulent transfer claims] are not derivative of the bankrupt. They are creditor claims that the [Bankruptcy] Code authorizes the trustee to assert on their behalf. The Supreme Court has made it clear that it is the parties to an arbitration agreement who are bound by it and whose intentions must be carried out. Thus there is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it." (citations omitted)).[15]

Thus, contrary to the Employee Defendants' misplaced reliance on them, *Javitch* and *Hays* stand for the proposition that when determining whether a receiver's claims are subject to an arbitration agreement entered into by the receivership entity, the court should distinguish between garden-variety torts brought by the receiver on behalf of the receivership entity and fraudulent transfer claims brought by the receiver on behalf of the creditors of the receivership entity. *Accord Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir. 1977) (holding that because

---

[15] This Court has cited *Hays*, including both its holding and its reasoning, with approval. *See, e.g.*, *In re Gandy*, 299 F.3d 489, 494–96 (5th Cir. 2002); *In re National Gypsum*, 118 F.3d 1056, 1066 (5th Cir. 1997).

a trustee "stands in the creditor's shoes" when bringing fraudulent transfer claims, the trustee "should not be compelled to arbitrate these claims"). Accordingly, because the Receiver's fraudulent transfer claims are properly asserted by the Receiver on behalf of all the Stanford creditors, the Receiver's claims are not derived from SGC and thus are not subject to SGC's arbitration obligations.

## B. The Receiver's fraudulent transfer claims are not subject to the Stanford investors' arbitration obligations.

Recognizing that both this Court and the district court have found that the Receiver's fraudulent transfer claims are properly asserted on behalf of the Stanford creditors, the Employee Defendants argue that even if the Receiver's fraudulent transfer claims are not subject to SGC's arbitration obligations, the Court should nevertheless compel arbitration of the Receiver's claims because the Stanford creditors *also* agreed to arbitrate any claims against the Employee Defendants. However, as the district court aptly recognized, the Employee Defendants' argument relies on a fatally-flawed premise—that all of the *Stanford creditors* agreed to arbitrate their claims against the Employee Defendants.[16]

---

[16] The district court also found that "as a matter of procedure, the Employee Defendants have waived any arguments based on the Client Agreement" because they "failed to argue under the Client Agreement in their motions [to compel arbitration]." (Order, S.R.7 at 3525 n.7 (noting that "one group raised the issue for the first time in a two-sentence footnote in their reply").) Indeed, it would make little sense to allow a party moving to compel arbitration to wait until its reply brief to allege—for the first time—the specifics of the agreement between the parties that supposedly compels arbitration of the claims at issue.

The 115 FA Defendants argue that "there is a strong legal presumption against a waiver of the right to arbitrate." (*See* 115 FA Defs.' Br. at 30.) The district court, however, did not find that

The Employee Defendants' argument reflects a fundamental misconception regarding the Receiver's claims. The Receiver has not asserted any claim on behalf of any particular Stanford creditor. The Receiver has asserted fraudulent transfer claims on behalf of *all* the Stanford creditors as a general class. Therefore, unless the Employee Defendants can establish the existence of a valid arbitration agreement between the Receiver (through the Stanford creditors generally) and the Employee Defendants (through SGC), the Receiver cannot be compelled to arbitrate his claims.[17]

The Employee Defendants have failed to establish the existence of such an agreement. The only arbitration agreement that the Employee Defendants have cited in support of their position that the Stanford creditors agreed to arbitrate their claims against the Employee Defendants is the arbitration provision contained in SGC's client agreement (the "Client Agreement"), which was an agreement between SGC and individual Stanford investors.

---

the Employee Defendants waived any *right* to arbitrate by invoking the judicial process or by expressing a desire to resolve this dispute through litigation. (*See* 115 FA Defs.' Br. at 30.) Rather, the district court merely found that "the Employee Defendants waived any *arguments* [in favor of any *right* to arbitrate] based on the Client Agreement." (Order, S.R.7 at 3525 n.7 (emphasis added).) As such, the 115 FA Defendants' statement that it has "*never* expressed a desire to litigate this case in court rather than arbitration" has no relevance to the district court's waiver ruling. (*See* 115 FA Defs.' Br. at 30.)

[17] As discussed above, in determining whether arbitration should be compelled, the first step of the analysis is to determine "whether there is a valid agreement to arbitrate *between the parties*." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (emphasis added). Like their argument that the Receiver is bound by SGC's arbitration obligations, the Employees Defendants' argument as to the Stanford creditors fails to get past this first step.

But not all of the Stanford creditors were Stanford investors. (*See* Order, S.R.7 at 2525 n.7 ("[The Employee Defendants' argument] depends on an erroneous conflating of 'creditors' and 'investors.' Even if the Court assumed that the Client Agreement's arbitration provision applied to every former Stanford investor," which the Employee Defendants have not even attempted to establish, "not all of the Stanford Defendants' creditors were investors. For example, the Stanford Defendants' scheme also allegedly left numerous trade creditors in the lurch.").)[18] And the Employee Defendants have failed to establish that the other Stanford creditors agreed to arbitrate their claims against the Employee Defendants. (*See* Order, S.R.7 at 3525 n.7 ("[T]he Employee Defendants point to no evidence that such creditors are bound by arbitration agreements.").)

Accordingly, because the Receiver cannot be compelled to arbitrate his fraudulent transfer claims based on the argument that *some* of the Stanford creditors agreed to arbitrate their claims against the Employee Defendants, the

---

[18] Notwithstanding the District Court's admonishment, the Employee Defendants continue to conflate the Stanford "creditors" and the Stanford "investors" in framing this particular issue for the Court. (*See, e.g.*, 115 FA Defs.' Br. at 28 ("[E]ven if the Receiver could assert claims on behalf of third-party creditors, he still would be required to arbitrate because those creditors also have entered into arbitration agreements with [the Employee Defendants]."); Eleven Defs.' Br. at 20–21 ("[E]ven if it is assumed that the Receiver . . . representing the creditors, since a substantial number of creditors (being all investor/creditors) agreed to arbitration the Receiver should not be permitted to litigate selective individual creditor claims but should be required to honor such creditor arbitration agreements on behalf of all of SGC creditors."); Eight Defs.' Br. at 24 ("The Receiver has to stand in someone's shoes. If it is not Stanford's shoes, then it must be Stanford's clients' shoes. This Court should compel arbitration of the creditors' fraudulent transfer claims because Stanford clients also agreed to arbitrate all disputes.").)

Receiver's claims are not subject to mandatory arbitration pursuant to the Client Agreement.[19]

## C.     Equitable and public policy considerations weigh against requiring the Receiver to submit his claims to arbitration.

"It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Great White Marine & Recreation, Inc.*, 428 F.3d 553, 556 (5th Cir. 2005) (internal citation omitted). Similarly, "[t]he district court has broad equitable powers to fashion appropriate relief for violations of the federal securities laws," *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998), and to "afford relief to defrauded investors," *SEC v. Elfindepan, S.A.*, No. 1:00CV00742, 2002 WL 31165146, at *6 (M.D.N.C. Aug. 30, 2002). The district court may "grant ancillary relief . . . where necessary and proper to effectuate the purposes of the securities laws." *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 438 (2d Cir. 1987) (internal quotation marks omitted). Thus, to the extent that the district

---

[19] The Employee Defendants' reliance on the arbitration provision found in the form Client Agreement is misplaced for the additional reason that it reflects a misunderstanding of the nature of a fraudulent transfer claim. A fraudulent transfer claim permits a judgment creditor or potential judgment creditor to recover money that should have remained in the possession of the debtor, irrespective of any connection that may have existed between the creditor and the transferee. Therefore, the Receiver's claims do not arise out of the Client Agreement or the relationship between any particular Stanford investor and any individual Employee Defendant (indeed, it is likely that for any individual Employee Defendant, there was no relationship at all between the Employee Defendant (*i.e.*, transferee) and the vast majority of Stanford creditors), and, thus, the arbitration provisions in the alleged Client Agreement should not apply to the Receiver's fraudulent transfer claims. *Cf.* Federal Arbitration Act, 9 U.S.C. § 2 (authorizing agreements to arbitrate controversies "arising out of such contract or transaction").

court's broad powers and wide discretion in an equity receivership are relevant to this Court's determination, the following equitable and public policy considerations should weigh in the Court's analysis.

First, it is imperative that all of the Receiver's claims be adjudicated in the same forum. The district court recognized as much when it directed the Receiver to file all actions seeking the recovery of Receivership Estate assets in the district court. (*See* S.ROA(298) at 88–90.) If this Court were to find that the Receiver's claims are subject to SGC's arbitration obligations, there would be a substantial risk of inconsistent arbitration rulings on key questions of law, including, for example, whether there is any support in the law for the proposition that the Employee Defendants gave "reasonably equivalent value" for the transfers by selling fraudulent SIB CDs to unwitting investors. Further, requiring the Receiver to prosecute his fraudulent transfer claims in multiple forums would add an unnecessary layer of litigation to the resolution of the Receiver's claims, as the Receiver's fraudulent transfer claims against other Stanford transferees would continue in the district court. Moreover, the additional time and cost that would be incurred in bringing any arbitrator up to speed on the facts of this case would unduly deplete the Receivership Estate to the detriment of the Stanford creditors.

Second, requiring the Receiver to submit any of his claims to arbitration would needlessly fracture this case into multiple forums and multiple

matters. If only some of the Receiver's claims are found to be subject to mandatory arbitration, the Receiver would be entitled to continue prosecuting his remaining claims in the district court. *See Hays*, 885 F.2d at 1154–55 (requiring trustee to arbitrate tort claims derived from debtor but allowing trustee to continue prosecuting fraudulent conveyance claims in district court because they were asserted by trustee on behalf of creditors, who were not party to arbitration agreement between debtor and defendant).

Third, if the Court were to find that the Receiver does not have standing to bring his fraudulent transfer claims on behalf of the Stanford creditors, certain chaos would abound. In *Burnazos*,[20] where the court held that the receiver could not assert fraudulent conveyance claims because he did not have the court-given authority to do so, the court noted that there was "no obvious need" for the receiver to bring an action on behalf of creditors because those same creditors could bring those same claims as part of a class-action lawsuit against the lone defendant. *See* 835 F.2d at 1506–07, 1515–16. The same reasoning would not apply here, as it is highly unlikely that the entire class of Stanford creditors would find it in their best interest to assert their fraudulent transfer claims against the

---

[20] As demonstrated above, the issue in *Burnazos* was not whether receivers have standing to assert creditors claims; rather, the only issue before the First Circuit was whether the district court had granted the recever in *that* case the authority to bring claims on behalf of creditors. *See Burnazos*, 835 F.2d at 1516 (reserving any opinion as to whether expanded authority to assert creditor claims would be legal).

hundreds of Employee Defendants in a single lawsuit. Instead, each of the thousands of Stanford creditors would likely race to the courthouse to file their own fraudulent transfer actions against multiple Employee Defendants. *See id.* at 1515 (noting that fraudulent conveyance law rewards the "swiftest of wing"); *cf. In re MortgageAmerica Corp.*, 714 F.2d at 1275–76 ("The [The Bankruptcy Code] allows the bankruptcy trustee to *step into the shoes of a creditor* for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors, not just those who win a race to judgment. . . . Any other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served. *Even without the Bankruptcy Code and the policies that support it, we would be reluctant to elevate such a principle to a rule of law.*" (emphasis added)); *Picard II*, 460 B.R. at 95 ("[A]llowing individual creditors to pursue certain claims common to all of them would result in the kind of rush to judgment and inconsistent adjudications that the bankruptcy laws exists to avoid. Thus, to further the goals of the bankruptcy laws generally, such claims should be deemed vested in the trustee, with exclusive standing to pursue them for the benefit of all creditors."). Each of the Employee Defendants, in turn, would be subject to a multiplicity of lawsuits—most, if not all, of which would be filed by Stanford creditors with whom the Employee Defendant will have had no prior relationship at all.

Fourth, if any of the Receiver's claims are submitted to arbitration, it is likely that the resolution of those claims will be shrouded in secrecy. *See, e.g.*, FINRA Code of Arbitration Procedure for Industry Disputes Rule 13904(g) (stating that an "explained decision" is only required when both parties request it, and even then, "[i]nclusion of legal authorities and damage calculations is not required"); *id.* at Rule 13602 (providing that arbitration panel has discretion to determine whether anyone—other than the parties, their representatives, and expert witness—can attend the arbitration hearing). Because the public has an interest in ensuring that the Employee Defendants do not profit at the expense of the Stanford fraud victims, forcing the Receiver to resolve his fraudulent transfer claims—even his claims against Allen Stanford himself— behind the curtain of arbitration would be contrary to the public interest.

**D.     The Receiver is not estopped from refusing to proceed with arbitration.**

The Eleven Defendants argue that the Receiver is estopped from refusing to proceed with arbitration because he is allegedly seeking a "direct benefit" from the contracts between SGC and the Employee Defendants. This specious argument has no basis in fact or law. The Receiver has plainly disavowed the "contracts" between SGC and the Employee Defendants. He seeks no benefit from them, and he is not pursuing a liability theory that relies on their existence or validity.

Under these circumstances, the Receiver is not bound by the arbitration agreements within those contracts, as the Texas Supreme Court itself recognized in the *In re Weekley Homes* case cited by the Eleven Defendants. In that case, Justice Brister, writing for the majority, stated, "Nonparties face a choice when they may plead in either contract or tort . . . . If they pursue a claim 'on the contract,' then they must pursue all claims—tort and contract—in arbitration. Conversely, if they choose not to sue 'on the contract,' they may pursue the tort claims in court, but the contract claims will thereby likely be waived under the election-of-remedies doctrine." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (internal citations omitted).

The Receiver is not suing on the contracts containing the arbitration clauses. The Receiver has elected to disaffirm the contracts and pursue claims arising under law that is totally independent of the contracts at issue. Accordingly, direct benefits estoppel does not apply, and the Receiver is not bound to arbitrate his claims. *See id.* at 132, 135 (holding that "claims can be brought in tort (and in court) if liability arises from general obligations imposed by law" and recognizing that salient point for direct benefits estoppel is that "a nonparty cannot both have his contract and defeat it too").

**E.    The Receiver's unjust enrichment claim is not subject to arbitration.**

The Employee Defendants erroneously argue that the Receiver is required to arbitrate his claims because his unjust enrichment claim belongs only to SGC, and, therefore, the Receiver must be asserting it on behalf of SGC.

As a factual matter, the Employee Defendants are simply wrong. The Receiver is asserting the claims at issue on behalf of Stanford's creditors. *See, e.g.*, *Alguire II*, 647 F.3d at 601 ("[T]he district court weighed the interests of the Employee Defendants against the interests represented by the Receiver (*i.e.*, *the interests of the creditors*)." (emphasis added)). Accordingly, the Employee Defendants' argument is really an argument about the merits of the Receiver's claim—not an argument that the claim is subject to arbitration.[21]

Additionally, if some claims are arbitrable and others are not, it is not the case, as the Employee Defendants assert, that non-arbitrable claims must be submitted to arbitration. *See KPMG LLP v. Cocchi*, 132 S. Ct. 23, 24 (2011) ("The [Federal Arbitration] Act has been interpreted to require that if a dispute

---

[21] As to the merits of the Receiver's claim, the Employee Defendants' argument is also wrong. To establish a claim of unjust enrichment, the Receiver has to do nothing more than show that the Employee Defendants hold money that in equity and good conscience belong to another. *See Hunter v. Pricekubecka, LLC*, 339 S.W.3d 795, 807 (Tex. App.—Dallas 2011, pet. denied) ("A cause of action for money had and received is not based on wrongdoing, but, instead, looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another. In short, it is an equitable doctrine applied to prevent unjust enrichment." (internal citations omitted).

presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.").

## VII

## CONCLUSION

This case is not subject to arbitration because the Receiver simply does not "stand in the shoes" of SGC. To rule otherwise would overturn decades of case law and would effectively negate the Receiver's fraudulent transfer claims. Accordingly, the Court should affirm the district court's order.

Respectfully submitted,

BAKER BOTTS L.L.P.


By: /s/ Kevin M. Sadler

    Kevin M. Sadler
    State Bar No. 17512450
    kevin.sadler@bakerbotts.com
    Scott D. Powers
    State Bar No. 24027746
    scott.powers@bakerbotts.com
    98 San Jacinto Blvd., Suite 1500
    Austin, Texas  78701
    (512) 322.2500 (Telephone)
    (512) 322.2501 (Facsimile)

ATTORNEYS FOR APPELLEE
RALPH S. JANVEY

## CERTIFICATE OF SERVICE

I certify that on January 30, 2012, a copy of Appellee Ralph S. Janvey's Brief was filed using the U.S. Court of Appeals for the Fifth Circuit's ECF/CM system and all counsel of record listed below were served using the court's electronic Notice of Docket Activity pursuant to 5th Cir. R. 25.2.5:

Jason W. Graham
jason@grahamandpenman.com
T. Brandon Welch
GRAHAM & PENMAN, LLP
2989 Piedmont Road, NE, Suite 200
Atlanta, GA  30305

J. Pat Sadler
pat@sadlerlawfirmllc.com
SADLER LAW OFFICE, LLC
1155 Hightower Trail, Suite 200
Atlanta, GA  30350

Ben L. Krage
bkrage@kjllp.com
KRAGE & JANVEY, LLP
2100 Ross Avenue, Suite 2600
Dallas, TX  75201

Michael J. Stanley
mstanley@stanleyfranklaw.com
STANLEY FRANK & ROSE LLP
7026 Old Katy Road, Suite 259
Houston, TX  77024

Robert L. Wright
rwright@rlwpc.com
ROBERT L. WRIGHT, P.C.
612 Eighth Avenue
Fort Worth, TX  76104

Bradley W. Foster
bradfoster@andrewskurth.com
Matthew G. Nielsen
matthewnielsen@andrewskurth.com
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, TX  75201

John J. Little
jlittle@lpf-law.com
LITTLE PEDERSEN FANKHAUSER
901 Main Street, Suite 4110
Dallas, TX 75202

John P. Kincade
jkincade@winstead.com
WINSTEAD P.C.
5400 Renaissance Tower
1201 Elm Street
Dallas, TX  75270

/s/ Kevin M. Sadler
Kevin M. Sadler

## CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.2 and 32.3, the undersigned certified this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

1.      This brief contains 13,379 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 5th Cir. R. 32.2.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word software in Times New Roman, 14-pt. font for text and Times New Roman 12-pt. font for footnotes.

3.      The undersigned counsel understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7) may result in the Court's striking the Brief and imposing sanctions against the person signing the brief.

4.      This document has been scanned for viruses with most recent version of a commercial virus scanning program and is free of viruses.

Date:  January 30, 2012            /s/ Kevin M. Sadler
                                   Kevin M. Sadler